BUDGET RENT–A–CAR SYSTEMS, INC., Plaintiff,

v.

COUNTY OF WAYNE, a Michigan Charter County, Defendant.

No. 89–CV–72629–DT.

United States District Court, E.D. Michigan, S.D.

July 20, 1990.

Marvin Walkon, Southfield, Mich., for plaintiff.

Alan B. Havis, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

### INTRODUCTION

Plaintiff filed this action pursuant to 42 U.S.C. § 1983 seeking declaratory and equitable relief. Presently before the Court are cross-motions for summary judgment pursuant to Fed.R.Civ.P. 56.[1]

This case presents a constitutional and statutory challenge to a provision of a contract entered into between defendant County of Wayne and plaintiff Budget Rent–A–Car Systems, Inc. The provision of which plaintiff complains provides that, in consideration for an in-terminal concession at the Detroit Metropolitan Airport, plaintiff must pay 9.5% of its gross revenues derived from all operations within three miles of the airport. The authority of Wayne County to operate Detroit Metropolitan Airport (hereinafter, Airport) is specifically conferred and regulated by the Michigan Aeronautics Code, M.C.L.A. § 259.126 *et seq.* Plaintiff argues the provision of the contract deprives it of its property without due process of law; is so patently arbitrary, irrational and unfair as to deprive it of equal protection of the laws; and is violative of the restrictions imposed upon defendant's authority to confer privileges of concession by MCLA § 259.133(e), and so is illegal under Michigan law.

### I. SUMMARY JUDGMENT

Summary judgment is appropriate where no genuine issue of material fact remains to be decided and the moving party is entitled to judgment as a matter of law. *Blakeman v. Mead Containers*, 779 F.2d 1146 (6th Cir.1985); Fed.R.Civ.P. 56(c). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In applying this standard, the Court must view all materials offered in support of a motion for summary judgment, as well as all pleadings, depositions, answers to interrogatories, and admissions properly on file in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Cook v. Providence Hosp.*, 820 F.2d 176, 179 (6th Cir.1987); *Smith v. Hudson*, 600 F.2d 60 (6th Cir.1979), *cert. dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). In deciding a motion for summary judgment, the Court must consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2512. Although summary judgment is disfavored, this motion may be granted when the trial would merely result in delay and unneeded expense. *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *A.I. Root Co. v. Computer/Dynamics, Ind.*, 806 F.2d 673, 675 (6th Cir.1986). Where the non-moving party has failed to present evidence on an essential element of their case, they have failed to meet their burden and all other factual disputes are irrelevant; thus, summary judgment is ap-

---

1. Defendant's motion also seeks relief pursuant to Fed.R.Civ.P. 12(b)(1) and (6). The Court considered extraneous matter such as affidavits in deciding defendant's motion. Therefore, defendant's 12(b)(6) motion to dismiss for failure to state a claim is properly treated as a motion for summary judgment under Fed.R.Civ.P. 56. Defendant's 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is addressed in the body of the opinion.

propriate. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552; *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (Footnote omitted)).

## II.  FACTS

The relevant facts are not in dispute. Automobile rental companies such as plaintiff that wish to operate an in-terminal concession, are not only required to pay 9.5% on gross revenues derived from Airport-generated rentals, but are also required under the "radius clause" in the concession agreement, to pay 9.5% on gross revenues derived from any rental, so long as the facility where the local rental takes place is within three miles of the Airport boundary.  Gross revenue is defined as the "total revenue derived by the concessionaire from all operations of the rent-a-car concession within three miles of the Airport boundary, regardless of whether vehicles are returned to the Airport or to some other station."  This provision is found in all in-terminal rent-a-car contracts and has been in plaintiff's contracts for over a decade and at least their last four contracts. In-terminal car rental companies that occupy space within the Airport are permitted to maintain a counter;  have a large sign within the occupied space;  and have a designated pull-off area adjacent to the through-way where their courtesy vehicles may pick-up customers.  The pull-off areas contain a sign bearing the name of the in-terminal concessionaire and are restricted for in-terminal concessionaire courtesy vehicle use only (Affidavit of Daniel Kerber, Deputy Director of Airports for Wayne County, at pg. 1).

Off–Airport rent-a-car companies have no physical presence at the Airport, either by space or sign, and may only pick up customers with their courtesy vehicles at an area on the throughway where any private vehicle may drop off or pick up.  The Wayne County Sheriff personnel and Airport Operations personnel have been instructed to watch for and guard against any off-Airport rent-a-car company from attempting to use the area designated and signed for in-terminal courtesy vehicle pick-up.  While violations sometimes occur, these areas are regularly patrolled and when violators are found, they are told to leave and use the throughway area that is used by any private vehicle for drop-off or pick-up. (Kerber Affidavit at pg. 2).  Off–Airport rent-a-car companies are not required to pay any charge whatsoever for their access to the Airport.

## III.  OPINION

### A.  Equal Protection

■ The Court will first address plaintiff's equal protection argument.  The Equal Protection Clause of the Fourteenth Amendment commands that "[n]o State shall ... deny any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. *Plyler v. Doe*, 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982). Section 5 of the Amendment empowers Congress to enforce this mandate, but absent controlling congressional direction, the courts themselves derived standards for determining the validity of state legislation or other official action that is challenged as denying equal protection.  "The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985).  "When social or economic legislation is at issue, the Equal Protection Clause allows the states wide latitude, ... and the Constitution presumes that even improvident decisions will be rectified by democratic processes." *Id.* (citations omitted).  Federal courts do not sit as arbiters of the wisdom or utility of these laws. *Id.* at 439, 105 S.Ct. at 3254.

In the case at bar, there is no legislation involved;  the government has not specifically classified the car rental companies for

different benefits or burdens under the law. The classification is the result of a contract entered into at arms length and mutually agreed to by both parties. It is questionable, then, whether equal protection applies to this case. Defendant maintains that constitutional analysis in a contractual context is inappropriate and inapplicable. Accordingly, defendant moves pursuant to Fed.R.Civ.P. 12(b)(1) to dismiss for lack of subject matter jurisdiction. The Court recognizes, however, that defendant was acting pursuant to state law when it entered into the contract in question, and by this official action, created a classification that results in different benefits and burdens. *See Columbus Board of Ed. v. Penick,* 443 U.S. 449, n. 5, 99 S.Ct. 2941, n. 5, 61 L.Ed.2d 666 (1979). Accordingly, the Court will test the classification using an equal protection analysis.

Plaintiff contends it is similar to off-Airport rent-a-car companies, but that it is being treated differently. Specifically, plaintiff complains that as a condition for having an in-terminal concession, it must pay a charge for purely local rentals, having no connection with the Airport, while rent-a-car companies that do not have an in-terminal concession, but which engage in substantial business activity at the Airport, pay no charge whatsoever.

Plaintiff does not contend the contract impinges upon a fundamental right or discriminates against a suspect class. The challenged contract is solely a local economic regulation. The Supreme Court has provided the following guidance for considering whether an economic regulation violates equal protection guarantees:

> When local economic regulation is challenged solely as violating the Equal Protection Clause, this Court consistently defers to legislative determinations as to the desirability of particular statutory discriminations. Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest. States are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude. Legislatures may implement their program step by step in such economic areas, adopting regulations that only partially ameliorate a perceived evil and deferring complete elimination of the evil to future regulations. In short, the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines; in the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment.

*City of New Orleans v. Dukes,* 427 U.S. 297, 303–304, 96 S.Ct. 2513, 2516–2517, 49 L.Ed.2d 511 (1976) (citations omitted).

Defendant's stated purpose of the "radius clause," which results in a 9.5% charge on rentals that may have no connection with the Airport, is to discourage an in-terminal concessionaire from opening an off-airport location and diverting rentals to the off-terminal location, thereby reducing fees required to be paid to the Airport. Clearly, the action taken by defendant has a legitimate purpose. It may happen that an in-terminal concessionaire would complete car rental transactions at a location just off the Airport grounds and avoid the 9.5% charge on Airport rentals. The radius clause discourages this practice because it is doubtful rent-a-car companies with in-terminal concessions would inconvenience patrons by transporting them outside the three-mile radius to complete the rental transaction. Defendant's method to reach its objective may not be the most preferred, but it is not for this Court to second guess the wisdom or the desirability of defendant's action.

Furthermore, the Court holds that it was reasonable for defendant to believe that use of the challenged action would discourage in-terminal concessionaires from divert-

ing rentals to off-Airport facilities. It would inconvenience customers of in-terminal rent-a-car companies to be transported three miles in order to pick-up their rentals cars. Therefore, it was reasonable for defendant to conclude that their action would discourage in-terminal car rental companies from diverting Airport transactions to off-Airport locations.

Finally, the Court notes that as a result of its concession agreement, plaintiff receives benefits that off-Airport rent-a-car companies do not. For example, plaintiff has an in-terminal concession with a large sign displaying its name. Plaintiff receives the benefit of walk-up customers that off-Airport rent-a-car companies do not. Plaintiff also receives the benefit of designated drop-off and pick-up areas where their courtesy vehicles freely stop to pick-up and drop-off its customers. Off–Airport rent-a-car companies do not have the benefit of these designated areas and must use the throughway used by all private Airport ground traffic.[2]

It is the opinion of this Court that defendant's concession agreement, which charges plaintiff 9.5% of its gross revenues derived from all operations within three miles of the Airport, does not violate the Equal Protection Clause of the Fourteenth Amendment. Defendant's action is rationally related to a legitimate state interest.

### B. Substantive Due Process

■ Plaintiff's second argument is that defendant may not, consistent with due process, impose a charge on plaintiff's local rentals as a condition for having an in-terminal concession, where plaintiff's local rentals bear no relationship whatsoever to plaintiff's activities at the Airport. Plaintiff argues that the exaction of a charge by a governmental body for which no benefit has been received, deprives the plaintiff of its property without due process of law. In sum, plaintiff contends that the imposition of a charge on local rentals is the

functional equivalent of a tax on the privilege of doing business at the Airport by having an in-terminal concession, and so is subject to the restrictions on a state's taxing power imposed the due process clause.

Plaintiff's argument is without merit; defendant's system of access fees is not the functional equivalent of a tax. Rather than attempt to decipher the purposes for which every individual who rents a car from every in-terminal rent-a-car concessionaire, defendant has insisted on the provision in question which applies to all gross revenue a rent-a-car company receives within three miles of the Airport. This encompasses the area in which all in-terminal rent-a-car companies have their locations.

As pointed out by defendant, while there may be a better way to pin down the problem, a better way is irrelevant when applying a constitutional due process analysis.

> Regardless of whether a court is employing a substantive due process or equal protection analysis, it should use the same standards of review. If a law regulating all persons involves only matters of economies of social welfare, a court should defer to the legislature and uphold the law so long as it is rationally related to a legitimate interest of government.

J. Nowak, R. Rotunda & J. Young, *Constitutional Law*, 351 (West 3d ed. 1986). *See also Schweiker v. Wilson*, 450 U.S. 221, 230, 101 S.Ct. 1074, 1080, 67 L.Ed.2d 186 (1980). The provision of the contract in question is rationally related to the administrative anomaly presented. Therefore, it passes constitutional muster.

### C. State Law Claim

■ Finally, plaintiff has cited to Michigan statutory law which governs the powers conferred on a political subdivision which has established an Airport. Specifically, plaintiff cites to M.C.L.A. § 259.113, which states in pertinent part:

---

**2.** The Court is aware that off-Airport rent-a-car companies do at times use the designated pick-up and drop-off areas. Defendant has indicated that it prohibits such use and has instructed the

Wayne County Sheriff personnel and Airport Operations personnel to guard against such prohibited use.

In addition to the general powers of this act, conferred, and without limitation thereof, a political subdivision which has established or may hereafter establish airports, ... is hereby authorized: (e) [t]o confer the privileges of concessions of supplying upon its airports ... services ...; and to enter into ... contracts ... of concessions with any person or persons.... The terms, charges, rentals, and fees shall be equal and uniform for the same type of facilities provided, services rendered, or privileges granted with no discrimination between users of the same class for like facilities provided, services rendered or privileges granted....

It is the opinion of the Court that by the very nature of the terms in the statute, it does not apply to the case at bar. There is no discrimination between users of the same class for like services rendered. Plaintiff, an in-terminal concessionaire, is provided with a concession stand and specific and designated pick-up and drop-off areas. The off-Airport rent-a-car companies do not have concession stands and are not afforded the privilege of the specific and designated drop-off and pick-up areas. Accordingly, the provision in the contract between plaintiff and defendant does not violate Michigan law.

## CONCLUSION

Accordingly, for the reasons stated above, plaintiff's motion for summary judgment is DENIED, defendant's motion for summary judgment is GRANTED and plaintiff's complaint is DISMISSED.

IT IS SO ORDERED.