ENTERPRISE LEASING COMPANY,
Plaintiff,

v.

METROPOLITAN AIRPORTS
COMMISSION,
Defendant.

No. Civ. 98–1327 (JRT/FLN).

United States District Court,
D. Minnesota.

April 24, 2000.

David Powell Pearson, Winthrop & Weinstine, St. Paul, MN, Karl Craig Wildfang, Winthrop & Weinstine, Minneapolis, MN, for Enterprise Leasing Company, plaintiff.

Donald Wright Selzer, Jr., Andrew J. Voss, Littler Mendelson, Minneapolis, MN, for Metropolitan Airports Commission, defendant.

John Patrick Brendel, Burke J. Ellingson, Brendel & Zinn, St. Paul, MN, for Mall of America Inc., movant.

## MEMORANDUM OPINION AND ORDER

TUNHEIM, District Judge.

Plaintiff Enterprise Leasing Company ("Enterprise") brings this action against the Metropolitan Airports Commission ("MAC") under the Commerce, Due Process and Equal Protection Clauses of the United States Constitution, the Due Process and Equal Protection Clauses of the Minnesota Constitution, and section 473.651 of the Minnesota Statutes. Enterprise's claims arise from MAC's enactment of an ordinance that imposes a fee on certain automobile rental agencies who transact business on airport property. This matter is before the Court on MAC's motion for summary judgment against all claims. This matter is also before the Court on Enterprise's cross-motion for partial summary judgment declaring the ordinance invalid under state law, as set forth in its memorandum in opposition to defendant's motion.

## BACKGROUND

MAC is a public corporation chartered by the State of Minnesota to manage commercial aviation services at the Minneapolis–St. Paul Metropolitan Airport (the "Airport"). Pursuant to Minnesota statute, MAC is empowered to enact ordinances for the purpose of managing and operating the Airport. *See* Minn.Stat. § 473.608, subd. 17. In 1998, MAC enacted Ordinance 85. This enactment provides that all "off-airport" automobile rental agencies must pay a fee to MAC in the amount of 8.5% of their gross receipts for transactions occurring on Airport property. "Off-airport" automobile rental agencies include companies who pick up customers at the Airport, but do not otherwise rent space, maintain service counters, or conduct their operations on Airport property. These companies contrast with "on-airport" automobile rental agencies, who rent space at the Airport from MAC and are thereby able to maintain service counters and fleets of rental vehicles on Airport property. Enterprise brings this action against MAC as an off-airport agency.

The 8.5% fee assessed against off-airport automobile rental agencies under Ordinance 85 is not the only user fee based on gross receipts that MAC has imposed against concessionaires conducting business at the Airport. Pursuant to individualized contracts or "concession agreements" with MAC, Airport restaurants and similar businesses located in the terminal also pay fees to MAC calculated as a percentage of their revenues from Airport business.

Moreover, although Ordinance 85 is not applicable to them, on-airport automobile rental agencies also pay MAC a fee in the amount of 8.5% of their gross revenues for the opportunity to conduct business as the Airport. MAC assesses this fee pursuant to individualized concession agreements with each on-airport agency. Unlike the 8.5% fee assessed against off-airport agencies pursuant to Ordinance 85, however, annual fees paid by most on-airport agencies are subject to a minimum annual guarantee of at least $300,000. In addition to the 8.5% gross revenues assessment, on-airport agencies also pay MAC rental fees based on the amount of space actually occupied at the Airport by each agency. The record reflects that MAC receives approximately $9.5 million per year in total revenue from on-airport automobile rental agencies, of which $1 million per year is generated by rental fees.

On-airport automobile rental agencies appear to be in a significantly better position to market their services to Airport customers than are off-airport agencies. On-airport agencies operate their own service counters at the Airport and therefore derive direct advertising benefits from their concession agreements with MAC. Because on-airport agencies maintain nearby fleets on Airport property, they are also positioned to provide better customer service. Unlike on-airport agencies, off-airport agencies are burdened by MAC's "double bussing" policy. Pursuant to this policy, all car rental customers must walk from the terminal to a designated pick-up area in order to board a shuttle bus that takes them to the area in which on-airport agencies maintain their fleets. From there, each off-airport rental customer must walk with his or her luggage to another pick-up area. There the customer boards a second shuttle bus, operated by the off-airport agency, that takes him or her to the off-airport rental car site. This process greatly inconveniences off-airport rental agency customers and presumably results in a loss of business to off-airport agencies.

MAC limits the physical space that it allocates to automobile rental agencies, and as a result, such agencies must bid for only six available concession agreements offered by MAC in order to become on-airport agencies. MAC permits all automobile rental companies to participate equally in the bidding process.[1] Enterprise asserts that, although it desires to contract with MAC and become an on-airport agency, it has not been able to participate successfully in the bidding process because it is a small company and cannot afford to provide a minimum fee guarantee of $300,000 or more as required by MAC from most on-airport agencies.

Prior to the enactment of Ordinance 85, fees assessed against off-airport automobile rental agencies were governed by a preexisting ordinance enacted in 1994 ("Ordinance 79"). Ordinance 79 imposed a charge of $1.75 per transaction on all off-airport ground transportation services, including hotel shuttles, off-airport parking lot shuttles ("park-and-fly lots"), taxicabs, off-airport car rental agencies, and similar businesses. As applied to off-airport car rental agencies, this fee was equivalent to approximately 1.5% to 2.1% of the gross revenues generated by Airport customers, in contrast with the 8.5% fee imposed by Ordinance 85. MAC justified the enactment of Ordinance 79 as a mechanism for recovering the actual capital and operating costs directly associated with the use of the Airport's commercial roadways. In order to arrive at the $1.75 figure, MAC conducted research to calculate the expense of maintaining and operating the roadways used by commercial vehicles. Although Ordinance 85 imposes an increased user fee based on gross receipts upon off-airport automobile rental agencies, it does not alter the $1.75 per-transaction fees applicable to other ground transportation services pursuant to Ordinance 79.

On-airport agencies paid an 8.5% gross receipts fee for the privilege of doing business at the Airport for a number of years prior to the enactment of Ordinance 85. One of MAC's stated reasons for enacting Ordinance 85 was to make the fees paid by off-airport agencies commensurate with those paid by on-airport agencies. MAC asserts that because the user fees paid by off-airport agencies were much lower than those paid by on-airport agencies, it needed to equalize the fees paid in order to prevent on-airport agencies from moving off-site, and thus threatening an established revenue base for the Airport.[2]

---

1. The only exception to this practice is MAC's policy of offering one of the six available agreements to a woman or minority business enterprise ("MBE"). Enterprise does not qualify as an MBE.

2. MAC has offered no specific evidence showing that any on-airport agency actually did threaten to leave. Indeed, despite the disparity in fees prior to the enactment of Ordinance 85, bidding for concession agreements appeared to remain competitive.

MAC states other motives for the new assessment as well. These motives include a desire to make the fees paid by off-airport agencies comparable to those paid by such companies at other national airports, and a need to generate additional revenue to support a major expansion planned for the Airport that is anticipated to cost approximately $2 billion over a period of ten years.

In contrast with the enactment of Ordinance 79, MAC conducted no research in connection with the enactment of Ordinance 85 related to the value of the roadways and facilities used or the expense of maintaining them. Although MAC did commission a study reviewing the feasibility of a new fee structure for off-airport automobile rental agencies, that study addressed only the fees charged to automobile rental companies by other major airports in the nation, the rationales asserted by other airports to justify such fees, the gross receipts historically earned by automobile rental companies in Minnesota, and the potential increase in revenue that MAC could anticipate from a change in fee structure.

Prior to enacting Ordinance 85, MAC held public meetings and solicited public comment about the proposed plan. Both on-airport and off-airport automobile rental agencies had an opportunity to participate in these meetings and state their positions with regard to the ordinance. Enterprise voiced its objections to the proposal as one of the meeting participants. MAC nevertheless approved the proposal and enacted Ordinance 85 on January 20, 1998. This lawsuit followed.

## ANALYSIS

### I. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is enti-

tled to a judgment as a matter of law." Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is not appropriate if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.* Summary judgment is mandated when, after adequate time for discovery and upon motion, the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case, on which that party would bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In reviewing a motion for summary judgment a court must give the nonmoving party the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *See Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076 (8th Cir.1980). The nonmoving party may not merely rest upon allegations or denials in its pleadings, however, but must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. *See Burst v. Adolph Coors Co.*, 650 F.2d 930, 932 (8th Cir.1981).

### II. Validity of the Ordinance under Minn.Stat. § 473.651

Enterprise seeks a declaratory judgment stating that Ordinance 85 is invalid on the ground that MAC exceeded its statutory authority when it enacted the ordinance. Enterprise argues that the ordinance constitutes an impermissible tax, and that even if it is not a tax it is beyond the scope of MAC's limited authority under section 473.651 of the Minnesota Statutes.

MAC is a public corporation organized and governed pursuant to sections 473.601 through 473.679 of the Minnesota

Statutes. *See* Minn.Stat. § 473.603. "As such, it has no inherent powers, but rather it only has such powers as are expressly conferred by statute or are implied as necessary in aid of those powers which are expressly conferred." *Alevizos v. Metropolitan Airports Comm'n*, 298 Minn. 471, 216 N.W.2d 651, 664 (1974) (internal quotation omitted). Section 473.651 vests MAC with the authority to determine the charges assessed against automobile rental companies and other businesses for the use of Airport property. This authority is not absolute, however, but is limited by the explicit statutory language:

> [MAC] shall have the authority to determine the charges for the use of any property under its management and control, and the terms and conditions under which such property may be used. Where there is reasonable basis for classification of users as to any use, the corporation may classify users, *but charges as to each class shall be reasonable and uniform for such use and established with due regard to the value of the property and improvements used and the expense of operation to [MAC]*.

Minn.Stat. § 473.651 (emphasis added).

■ Enterprise asserts that MAC failed to give "due regard" to the value of the Airport facilities used by off-airport automobile rental agencies when it established the 8.5% annual gross receipts fee under Ordinance 85. In response, MAC notes that the majority of cases in other jurisdictions have dismissed challenges to gross-receipts fees assessed against off-airport automobile rental agencies and other ground transportation companies by municipal airport commissions.

Several of the cases upholding such fees have done so in the context of constitutional challenges under the Commerce Clause. *See Alamo Rent–A–Car, Inc. v. Palm Springs*, 955 F.2d 30 (9th Cir.1991); *Alamo Rent–A–Car, Inc. v. Sarasota–Manatee Airport Auth.*, 906 F.2d 516 (11th Cir. 1990); *Salem Transp. Co. v. Port Auth.*, 611 F.Supp. 254 (S.D.N.Y.1985); *Transport Limousine of Long Island, Inc. v.* *Port Auth.*, 571 F.Supp. 576 (E.D.N.Y. 1983). In holding that gross receipts fees against off-airport companies do not overly burden interstate commerce, these cases look to the test established in *Evansville–Vanderburgh v. Delta*, 405 U.S. 707, 92 S.Ct. 1349, 31 L.Ed.2d 620 (1972). In *Evansville–Vanderburgh*, the Supreme Court held that airport user fees that do not discriminate against interstate commerce are reasonable under the Commerce Clause if they "reflect a fair, if imperfect, approximation of the use of facilities for whose benefit they are imposed," and are not "excessive in relation to the costs incurred" by the authorities. *Id.* at 717, 719, 92 S.Ct. 1349; *see also Northwest Airlines, Inc. v. County of Kent*, 510 U.S. 355, 367–68, 114 S.Ct. 855, 127 L.Ed.2d 183 (1994) (affirming that the standards set forth in *Evansville–Vanderburgh* are still good law, although that decision otherwise has been statutorily overruled).

Courts upholding gross receipts fees such as those at issue in this case reason, under the standards established in *Evansville–Vanderburgh*, that these fees reflect reasonable approximations of the use of airport facilities because off-airport car rental agencies and other ground transportation companies benefit from the "use" of the entire airport through access to the market of airline passengers, and not only from the use of the roadways, parking lots and other parts of the airport that they physically access. *See Alamo v. Sarasota–Manatee*, 906 F.2d at 520 (holding that "the 'benefit conferred' language of *Evansville–Vanderburgh* suggests that a broad construction of use is appropriate where the benefit derived by the user depends on the existence of the entire government-provided facility"); *Alamo v. Palm Springs*, 955 F.2d at 31 (agreeing with reasoning articulated in *Alamo v. Sarasota–Manatee*).

Other courts have applied this reasoning to challenges against off-airport transportation company user fees raised under state law, holding that gross receipts fees

of up to 10% are reasonable because the companies at issue benefit from access to the market of customers generated by the entire airport facility. *See Ace Rent–A–Car, Inc. v. Indianapolis Airport Auth.,* 612 N.E.2d 1104, 1108–09 (Ind.Ct.App. 1993); *Jacksonville Port Auth. v. Alamo Rent–A–Car, Inc.,* 600 So.2d 1159, 1163 (Fla.Ct.App.1992); *Westrac, Inc. v. Public Airport Auth.,* 812 P.2d 714, 718 (Colo.Ct. App.1991); *Alamo Rent–A–Car v. Bd. of Supervisors,* 221 Cal.App.3d 198, 272 Cal. Rptr. 19, 25 (1990); *Helmerich Drive–It– Yourself, Inc. v. Erie Municipal Airport Auth.,* 612 A.2d 562, 564–65 (Pa.Cmwlth. 1989). *But see Kenner v. New Orleans Aviation Bd.,* 603 So.2d 220, 226 (La.Ct. App.1992) (holding that the enabling statute at issue required the aviation board to base such fees on the cost of the particular facilities used by the off-site rental agencies, "not the general 'debts' or general airport facilities, or 'enhancement of the welfare of the board' ").[3]

MAC cites to these cases and encourages the Court to apply the reasoning adopted therein to the case at bar. On this basis, MAC argues that the 8.5% gross receipts fee challenged in this case is fair, because off-airport automobile rental agencies benefit from the "use" of the entire airport facility, and because other airports nationally charge comparable fees. The fundamental flaw with this argument is that the Minnesota statute at issue in this case is significantly different than the controlling statutes in other states, and therefore, the airport commissions in other states are not governed by the same restrictions. *See, e.g.,* Ind.Code § 8–22–3– 11(20) (1993); Colo.Rev.Stat. § 41–4–106 (1991); Cal. Gov't Code § 50474 (1990); 74 Pa.Cons.Stat. § 5903 (1989). Importantly, none of the governing statutes in other states require the airport commissions at issue to determine airport user fees "with due regard to the value of the property and improvements used and the expense of operation." Minn.Stat. § 473.651. For this reason, the argument that "everyone else is doing it" is unpersuasive. Thus, the relevant question is not whether courts in other jurisdictions have upheld gross receipts fees similar to those assessed under Ordinance 85, but whether the more restrictive language of section 473.651 permits such an assessment.

Only one judicial opinion appears to address the proper interpretation of this language. *See Hyland v. Metropolitan Airports Comm'n,* 538 N.W.2d 717 (Minn.Ct. App.1995). In *Hyland,* a personal ground transportation service challenged MAC's enactment of Ordinance 79 as beyond the scope of its authority. In upholding the ordinance, the court noted that it explicitly stated as its purpose to "provide for the equitable allocation of the costs of establishing and maintaining ground transportation facilities at the Airport." *Id.* at 720. The court further noted, "The record indicates that the fees are being charged to recover costs directly associated with the use of the commercial ground transportation roadways and facilities." *Id.* On this ground, the court found that the fees imposed under Ordinance 79 were "patently reasonable." *Id.*

Ordinance 85 plainly lacks the characteristics that the court in *Hyland* cited as a basis for upholding Ordinance 79. MAC openly admits that it enacted Ordinance 85 not only to pay for maintenance and improvements to the roadways, parking lots, and other ground transportation facilities specifically used by off-airport automobile rental agencies, but also to generate new revenues to pay for a proposed $2 billion expansion to the entire Airport. Moreover, the record reflects that in enacting Ordinance 85 MAC did not conduct research into the cost of maintaining and operating the facilities used by such agen-

---

**3.** Unlike the applicable statutes in either the other cases cited or in the case at bar, the language of the governing Louisiana statute in *Kenner* explicitly states that fees charged to off-airport automobile rental agencies "must be based upon the cost to the airport of the particular facilities or services used by [the agency]." La.Rev.Stat.Ann. § 2:605(D) (1992).

cies as it did when it enacted Ordinance 79. Nor did MAC establish the 8.5% user fee with regard to such costs, but instead justified the fee on the ground that it was commensurate with the rates charged by MAC to on-airport automobile rental agencies, and the rates that airport commissions in other states were charging off-airport agencies. These differences render MAC's statutory authority to enact Ordinance 85 much more questionable than its enactment of the "patently reasonable" fees at issue in *Hyland*.

In so finding, the Court does not intend to suggest that the statute limits MAC to assessing fees based only on the cost of maintaining the Airport's commercial roadways, as it did in connection with the enactment of Ordinance 79. Section 473.651 requires MAC to give "due regard" not only to the expense of operating the Airport property and improvements used, but also to the value of that property. This language indicates that MAC is permitted to assess fees commensurate with the value of the Airport facilities used by off-airport rental companies even when such value exceeds operation and maintenance costs.

The difficulty with this conclusion is that the statute does not define with any specificity the method or methods that MAC permissibly may apply in order to value the property used. The Court finds that the legislature's failure to specify such methods indicates generally an intent to confer upon MAC the discretion to apply any method of valuation that is reasonable. *See* Minn.Stat. § 473.608 (conferring upon MAC all powers "necessary and convenient to accomplish the objects and perform the duties prescribed by sections 473.601 to 473.679" of the Minnesota statutes). Moreover, the Court is cognizant of the fact that regardless of the method that MAC employs, the "value" of any Airport facility used for commercial purposes likely will be higher than that of similar property in other locations as a result of its

proximity to the market of consumers that the Airport generates.[4]

Nevertheless, the Court is not persuaded by MAC's argument that the value of the "property and improvements used" by off-airport automobile rental agencies is broad enough to include the value of the entire Airport. In *Hyland*, the court appeared to adopt a more narrow interpretation of the phrase "property and improvements used," including only the specific commercial roadways and other facilities actually used by ground transportation companies within its definition. Moreover, as noted *supra*, courts finding that a more broad interpretation of the term "use" is appropriate in the analysis of Commerce Clause actions predicate their findings on the "benefit conferred" language articulated in the *Evansville–Vanderburgh* Commerce Clause test. *See Alamo v. Sarasota–Manatee*, 906 F.2d at 520; *Alamo v. Palm Springs*, 955 F.2d at 31. Section 473.651 contains no similar language, requiring MAC to give consideration to the value of "the property and improvements used" rather than the benefits conferred upon the user. For these reasons, the Court concludes that the statute requires MAC to give due regard to the value of the specific Airport facilities that the off-airport automobile rental agencies actually use when assessing fees against them.

Nevertheless, the Court does not find that all gross-receipts fees assessed under section 473.651 are *per se* invalid. To the extent that such fees generally approximate the value of the property used, as derived by some reasonable calculation method, the statute does not appear to prohibit them. In enacting Ordinance 85, however, MAC failed to use any calculation method whatsoever which was targeted at determining the value of the Airport facilities that off-airport automobile rental agencies use. Indeed, MAC admits that it arrived at the 8.5% figure simply by following what other airports in the nation

---

4. Thus, the rent for a small storefront at the Airport is likely worth a significant amount more than the rent for a comparable storefront at a suburban strip mall.

have done, and by making the fees charged to off-airport rental companies at the Airport identical to the fees charged to on-airport companies.

In doing so, MAC neglected to take into account important factors that might differentiate the value of the property used by off-airport automobile rental agencies at the Airport from that used at other airports across the country. For example, commercial roadways and other ground transportation facilities at airports likely vary in the amount of physical space they occupy and in the maintenance costs they require, depending on how the airports are constructed. Moreover, the Airport's double-bussing policy likely results in both roadway maintenance costs and off-airport rental agency revenues that are lower than those at airports lacking such policies. Furthermore, to the extent that the market of rental customers generated by each airport affects the value of the property used, such value will differ depending on the demographic characteristics of airline passengers flying into a given airport, the accessibility of public transportation, the proximity of the airport to significant commercial centers, and other individual factors. For these reasons, MAC makes an unsupported assumption in concluding that the fees assessed against off-airport automobile rental agencies at other airports reflect the value of the property used at the Airport here.[5]

In making off-airport automobile rental agency fees identical to the fees assessed against on-airport agencies, MAC also failed to take into account differences between the value of the facilities these types of agencies use. MAC points out that on-airport agencies pay rent in addition to the gross-receipts user fees charged to them pursuant to their concession agreements. It asserts that this rent pays for the physical counter space and parking lots that on-airport agencies use, while the gross-receipts fees pay for the less tangible business benefits received from airport passengers. MAC further contends, without support, that such benefits are similar for both on-airport and off-airport agencies. In enacting Ordinance 85, MAC relied upon this assumption without confirming its truth. As a result, MAC neglected to consider the potential advantages that on-airport agencies derive from their proximity to the airport, including increased "walk-up" business from customers who arrive at the Airport without reservations, and the ability to serve customers without the inconvenience of double-bussing.

The Court lacks sufficient information to determine whether 8.5% constitutes a permissible fee under section 473.651. Nevertheless, the Court concludes for the above reasons that in assessing that amount, MAC failed to acquire any of the information necessary to give due regard to the value of the property and improvements that off-airport automobile rental agencies use, and to the expense of operating such facilities. MAC therefore acted outside of its statutory authority in enacting Ordinance 85. The Court accordingly grants Enterprise's motion for summary judgment on this issue.[6]

### III. Constitutional Claims

Enterprise also asserts that the fee assessed under Ordinance 85 violates its rights under the Due Process, Equal Protection, and Commerce Clauses of the United States Constitution, and under the

5. MAC argues that the value of the property used is equivalent to the amount of fees that the market will bear, and that the fees assessed at other airports reflect that amount. This argument is unpersuasive. In enacting Ordinance 85 MAC failed to conduct any research into whether the off-airport rental agency market in Minnesota actually will bear an 8.5% fee, or whether the new assessment ultimately will force such agencies to close or seek business elsewhere.

6. Having found that summary judgment is warranted on these grounds, the Court declines to address plaintiff's argument that the 8.5% gross receipts fee constitutes an unauthorized tax.

due process and equal protection provisions of the Minnesota Constitution. The Court joins the vast majority of other courts in declining to sustain plaintiff's constitutional challenge. *See Alamo v. Palm Springs,* 955 F.2d at 30–31; *Allright Colorado, Inc. v. Denver,* 937 F.2d 1502, 1511–13 (10th Cir.1991); *Alamo v. Sarasota–Manatee,* 906 F.2d at 518–23, *related to, Alamo Rent–A–Car, Inc. v. Sarasota–Manatee Airport Auth.,* 825 F.2d 367, 369–74 (11th Cir.1987) (*"Alamo v. Sarasota–Manatee I"*); *Budget Rent–A–Car Sys., Inc. v. County of Wayne,* 742 F.Supp. 947, 949–51 (E.D.Mich.1990), *aff'd,* 951 F.2d 348 (6th Cir.1991); *Airline Car Rental, Inc. v. Shreveport Airport Auth.,* 667 F.Supp. 303, 308–09 (W.D.La.1987); *Salem Transp.,* 611 F.Supp. at 257–58; *Transport Limousine of Long Island,* 571 F.Supp. at 581–84. The Court specifically finds persuasive the reasoning articulated by the Eleventh Circuit in *Alamo v. Sarasota–Manatee,* 906 F.2d at 518–22, in connection with Enterprise's Commerce Clause claim. The Court concludes for the reasons set forth therein that the user fees imposed under Ordinance 85 do not unduly burden interstate commerce under the standards articulated by the Supreme Court in *Evansville–Vanderburgh.*[7]

■ The Court further finds persuasive the reasoning articulated by the Tenth Circuit in *Allright Colorado,* 937 F.2d at 1511–13, and by the Eleventh Circuit in *Alamo v. Sarasota–Manatee I,* 825 F.2d at 369–74, in connection with Enterprise's equal protection and due process claims. The classification of off-airport automobile rental agencies as distinct from other ground transportation services appears reasonable, as these agencies serve different markets of customers.

■ Enterprise appears to argue further that MAC has violated the Equal Protection Clause by charging off-airport automobile rental agencies the same percentage fee as it charges to on-airport agencies, while providing them with fewer benefits. *See Enterprise Leasing Co. v. County of Wayne,* No. 98–1278/1398, 1999 WL 777678, slip. op. at 5–7 (6th Cir. Sept. 14, 1999). Although the Court agrees with Enterprise that the benefits to these companies derived from the airline passenger markets substantially differ, the record reflects that MAC subjects them to different treatment. In addition to the 8.5% user fees charged, MAC also charges rent to on-airport agencies and requires them to provide a $300,000 annual guarantee for the privilege of occupying space at the Airport. These differences in treatment distinguish this case from *Enterprise v. Wayne,* in which the Sixth Circuit held that summary judgment was inappropriate because the record lacked evidence demonstrating that on-airport agencies paid for their additional benefits. *See id.* at 6. For these reasons, the Court finds that the fees charged to off-airport automobile rental agencies are rational in comparison with on-airport rental agencies. Moreover, the record reflects that Enterprise received equal treatment from MAC in the process of bidding for concession agreements, and therefore, had equal opportunity to obtain the status of an on-airport agency at the outset. Enterprise's equal protection claim is denied for these reasons.

## ORDER

Based on the foregoing, and all of the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's motion for summary judgment [Docket No. 24] is **GRANTED in part** and **DENIED in part.**

2. Count I (Commerce Clause), Count II (Due Process Clause), and Count III (Equal Protection Clause) of plaintiff's complaint are **DISMISSED, with prejudice.**

---

7. The Court does not address MAC's argument for dismissal on the ground that it is a "market participant" free from the constraints of the Commerce Clause.

3. Plaintiff's motion for partial summary judgment [Docket No. 28] is **GRANTED**.

4. The Court hereby **DECLARES** that the ordinance enacted by defendant which took effect on May 1, 1998, herein described as "Ordinance 85," violates section 473.651 of the Minnesota Statutes. Defendant is permanently **ENJOINED** from implementing or enforcing the 8.5% user fee assessed against off-airport automobile rental agencies under Ordinance 85. Moreover, defendant is hereby **ORDERED** to refund to plaintiff any user fees paid to defendant in compliance with Ordinance 85 prior to the date of this Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**