[No. 50582-3-I. Division One. February 18, 2003.]

DOUGLAS M. BRANSON, *Appellant*, v. THE PORT OF SEATTLE, *Respondent*.

W. Scott Zanzig, Spencer Hall, Jr., and Arthur C. Claflin (of Hall Zanzig Claflin McEachern, P.L.L.C.), for appellant.

Carl J. Marquardt and Phillip H. Ginsberg (of Stokes Lawrence, P.S.) and Paul M. Bintinger (of Port of Seattle), for respondent.

ELLINGTON, J. — Rental car companies operating at Seattle-Tacoma International Airport are charged a fee of 10 percent of gross receipts. This fee complies with the requirements of the municipal airports act that it be reasonable, uniform, and established with due regard to the property used. The trial court properly dismissed Douglas Branson's suit against the Port of Seattle, and we affirm.

██ The municipal airports act authorizes municipalities operating airports to assess fees for the use of airport property by private rental car companies. Specifically, such municipalities have the authority to:

> determine the charges or rental for the use of any properties under its control and the charges for any services or accommodations, and the terms and conditions under which such properties may be used: PROVIDED, That in all cases the public is not deprived of its rightful, equal, and uniform use of the property. Charges shall be reasonable and uniform for the same class of service and established with due regard to the property and improvements used and the expense of operation to the municipality.[1]

---

[1] RCW 14.08.120(6).

The Washington statute is similar to many others adopted around the nation.[2] Rental car companies operating at Seattle-Tacoma International Airport (Sea-Tac) pay the Port of Seattle a concession fee of 10 percent of gross receipts, which is generally passed through to customers. Customer Douglas Branson sued the Port and various rental companies, claiming that under the statute, rental car companies cannot be charged a fee based on a percentage of gross receipts.[3] The trial court granted the Port's motion for summary judgment and Branson appeals.[4]

Branson chiefly relies on a 1992 attorney general opinion:

> Charges based on the user's gross receipts are likely to result in different charges for businesses that use airport property in the same way and to the same extent. Calculated in this way, charges would not be uniform, and would bear no relationship to the cost or operation of the property.
>
> . . . .
>
> While the charge at issue in your request apparently would be levied on all companies using airport property in the same manner, the amount paid by each company would depend on

---

[2] *See, e.g.,* ALASKA STAT. § 02.15.090 (Michie 2002) (charges shall be reasonable and uniform for the same class of service and established with due regard to the property and improvement used and the expense of operation); DEL. CODE ANN. tit. 2, § 706 (2002) (same); 620 ILL. COMP. STAT. 5/75 (2002) (same); MD. CODE ANN., TRANSP. II § 5-408 (2002) (same); MISS. CODE ANN. § 61-3-21 (2002) (same); MONT. CODE ANN. § 7-14-1125 (2002) (same); NEB. REV. STAT. § 3-215 (2002) (same); NEV. REV. STAT. 494.090 (2002) (same); N.C. GEN. STAT. § 63-53 (2002) (same); N.D. CENT. CODE § 2-06-11 (2002) (same); OKLA. STAT. tit. 3, § 65.5 (2002) (same); OR. REV. STAT. § 836.055 (2002) (same); S.D. CODIFIED LAWS § 50-6A-38 (Michie 2002) (same); TENN. CODE ANN. § 42-3-112 (2002) (same); TEX. TRANSP. CODE ANN. § 22.021 (Vernon 2002) (same); VA. CODE ANN. § 5.1-2.14 (Michie 2002) (same).

[3] Branson correctly notes that in general, the powers granted to a municipal corporation in its governing statute are narrowly construed. *See City of Tacoma v. Taxpayers of Tacoma,* 108 Wn.2d 679, 692, 743 P.2d 793 (1987) (quoting *Port of Seattle v. Wash. Utils. & Transp. Comm'n,* 92 Wn.2d 789, 794-95, 597 P.2d 383 (1979)). This "rule of strict construction," however, "does not apply to the mode or means a municipal corporation uses to carry out its grant of power." *Taxpayers,* 108 Wn.2d at 692. Nor does the rule apply where, as here, a municipal corporation acts in its proprietary capacity, "as the proprietor of a business enterprise for the private advantage of the city." *Hite v. Snohomish City Pub. Util. Dist. No. 2,* 112 Wn.2d 456, 459, 772 P.2d 481 (1989).

[4] Branson's claims against the rental car companies were separately dismissed and are not at issue.

that company's gross receipts. As explained above, there is no necessary correlation between a company's gross receipts and its use of airport property. Therefore, different companies would pay different charges for the same use. We believe that this system of charges would be no more uniform than the charge discussed in AGO 61-62 No. 100.

We are unable to envision a gross receipts measure that would uniformly consider the use of specific property and the cost to the airport of providing that use. Examples of these types of costs might be the costs of maintaining airport drives and providing traffic control and security.[5]

■■ Attorney general opinions are not binding on this court,[6] and we are not persuaded by the opinion here. First, its interpretation of the statute is too narrow. It assumes the phrase "property and improvements used" includes only those specific roadways and other facilities actually used by the rental car companies. Most courts have rejected such a narrow approach. In *Enterprise Leasing Co. v. Metropolitan Airports Commission*,[7] the Eighth Circuit interpreted the Minnesota statute, which is similar to RCW 14.08.120(6),[8] holding that "property and improvements used" includes the entire airport because "commercial users of an airport benefit from the entire facility."[9] The *Enterprise* court noted that those states wishing to link the fees charged to the use of specific facilities have expressly done so, whereas the

---

[5] 1992 Op. Att'y Gen. No. 18, at 5-7; Clerk's Papers at 628-30.

[6] *City of Pasco v. Dep't of Ret. Sys.*, 110 Wn. App. 582, 592 n.11, 42 P.3d 992 (2002) (citing *Davis v. King County*, 77 Wn.2d 930, 934, 468 P.2d 679 (1970)).

[7] 250 F.3d 1215 (8th Cir. 2001).

[8] The Minnesota statute provides:

[Metropolitan Airports Commission/MAC] shall have the authority to determine the charges for the use of any of the property under its management and control, and the terms and conditions under which such property may be used. Where there is reasonable basis for classification of users as to any use, [MAC] may classify users, but charges as to each class shall be reasonable and uniform for such use, and established with due regard to the value of the property and improvements used and the expense of operation to [MAC].

MINN. STAT. ANN. § 473.651 (2001).

[9] *Enterprise*, 250 F.3d at 1220.

Minnesota statute contains no such limiting language. The court concluded:

> Other states that allocate broad statutory authority for local airport authorities to charge user fees generally find that off-airport rental car companies benefit from the existence of the entire airport and may be charged accordingly. The common denominator in these cases is the idea that airport maintenance and construction is undertaken for airline passengers, who in turn are customers for all rental car companies.[10]

We agree with the Eighth Circuit's interpretation, for the same reasons. The attorney general opinion here ignores the reality that commercial entities using airport facilities benefit from the entire airport and the market it generates.

■ Second, the opinion is founded on the erroneous premise that charges must be "based upon the cost to the port district."[11] The statute requires only that charges be "established with *due regard* to the property and improvements used and the expense of operation to the municipality."[12] Due regard is "[c]onsideration in a degree appropriate to demands of the particular case."[13] Some measure of discretion is thus inherent in the phrase.[14] Further, the municipal airports act contemplates that the airport will be a revenue producing operation, and directs that revenue obtained through operation of the airport be used to maintain the facility and finance construction.[15] The Port has authority "[t]o exercise all powers necessarily incidental to the exercise of the general and special powers granted in this section."[16] Nothing in this scheme supports the notion that concession fees must be equivalent to the costs directly

---

[10] *Enterprise*, 250 F.3d at 1220-21 (footnote omitted).

[11] 1992 Op. Att'y Gen. No. 18, at 5; Clerk's Papers at 628.

[12] RCW 14.08.120(6) (emphasis added).

[13] Black's Law Dictionary 501 (6th ed. 1990).

[14] *Enterprise*, 250 F.3d at 1221.

[15] RCW 14.08.100(2).

[16] RCW 14.08.120(7).

incurred by the Port in hosting the rental car companies. Rather, the Port must give appropriate consideration to the companies' use of airport property and to its own expenses when determining the user fees.

■ The Port complied with this requirement. The record shows the Port considered many factors when developing its 2002 budget and business plan for Sea-Tac, including decreased revenue from the global economic slowdown, the drop in leisure travel and air cargo after September 11, 2001, the development of a remote consolidated rental car facility, and the need to repair and rebuild existing facilities, which "will require all the resources and organization the Aviation Division can bring to bear."[17] This is exactly the due regard given in Minnesota and upheld in *Enterprise*.

Third, the attorney general opinion concludes that a fee based on gross receipts is not uniform within the meaning of the statute because the fee does not reflect the fact that customers who rent cars for long periods make the same use of the airport as those who rent for only one day.[18] The underlying premise is that the uniformity requirement refers to customers.[19] But the statute requires only that "[c]harges shall be . . . uniform for the same class of service."[20] A class of service is a broad category, not a per customer tabulation. Rental car companies constitute such a category, and all are charged the 10 percent fee. An additional fee is charged to companies wishing to maintain an on-site presence. The Port levies a uniform charge on all rental car companies that use airport property. This is a uniform charge for the same class of service.

■ Finally, Branson argues the concession fee is not reasonable, alleging it generates "25 times" the Port's

---

[17] Clerk's Papers at 869, 878-79.

[18] *See* 1992 Op. Att'y Gen. No. 18, at 5-7; Clerk's Papers at 628-30.

[19] The 1992 attorney general opinion relies upon a 1962 attorney general opinion in which the question was the uniformity of charges levied on passengers. 1992 Op. Att'y Gen. No. 18, at 6; Clerk's Papers at 629.

[20] RCW 14.08.120(6).

related costs.[21] This figure is highly questionable. It derives from reports which appear[22] to identify a limited number of operating expenses directly incurred by the Port in servicing rental car concessions. The reports are not comprehensive and make no attempt to identify or allocate general overhead expenses such as road construction and maintenance.[23] Branson's argument has no merit.

As to what amount is a reasonable fee, it is appropriate to look to similar fees elsewhere, especially given the strong similarities in the authorizing statutes across the nation. The practice of charging a percentage of gross receipts for the use of airport property is widespread, and a rate of 10 percent is commonly accepted.[24] The Port's fee is reasonable.

Affirmed.

COLEMAN and AGID, JJ., concur.

Review granted at 150 Wn.2d 1017 (2003).

---

[21] Appellant's Br. at 21.

[22] The reports are not accompanied by any explanation of their purpose or methodology.

[23] For example, of the expenses incurred in servicing the rental car concessions in 1998, the report details total expenses of $537,000, mostly consisting of salaries ($168,530), wages ($45,051), and business and occupation taxes ($245,012). Clerk's Papers at 1354-56.

[24] *Toye Bros. Yellow Cab Co. v. Irby*, 437 F.2d 806, 811 (5th Cir. 1971) ("10% of the gross receipts is a commonly-accepted charge throughout the nation for use of Airport facilities").