**ALAMO RENT–A–CAR, INC., a Florida corporation, Plaintiff–Appellant,**

v.

**SARASOTA–MANATEE AIRPORT AUTHORITY, a political subdivision of the State of Florida, Defendant–Appellee.**

No. 88–4023.

United States Court of Appeals, Eleventh Circuit.

July 19, 1990.

Howard L. Conklin, Tripp, Scott, Conklin & Smith, Ft. Lauderdale, Fla., Donald A. Gifford, Thomas C. MacDonald, Jr., Shackleford, Farrior, Stallings & Evans, P.A., Tampa, Fla., Garfield, Tepper & Ashworth, P.C., Los Angeles, Cal., John W. Kearns, Coral Gables, Fla., for plaintiff-appellant.

A. Lamar Matthews, Jr., Williams, Parker, Harrison, Deitz & Gerzen, Sarasota, Fla., for defendant-appellee.

Before KRAVITCH and CLARK, Circuit Judges, and ATKINS *, Senior District Judge.

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

KRAVITCH, Circuit Judge:

Alamo Rent–A–Car ("Alamo"), having lost in this court on its equal protection claim, now appeals the district court's entry of judgment against it on its commerce clause and due process clause claims brought against the Sarasota–Manatee Airport Authority ("Authority"), the operator of the airport. We affirm the district court, with one minor exception.

## I. BACKGROUND

Alamo, a rental car agency, located its operation off the premises of the Sarasota–Bradenton Airport ("airport") in 1978. At that time, five other rental companies had "on-airport" concessions which had been obtained through competitive bidding. In 1981, without permitting competitive bidding, the Authority rolled over the existing concession contracts, and in July 1982 the Authority passed a resolution requiring the off-airport car rental companies to pay the Authority ten percent of their gross receipts obtained from customers who came from the airport. In addition, the resolution prohibited the off-airport car rental companies from soliciting business in the airport, and forbade them to pick up passengers who lacked a reservation. The resolution also prevented car rental companies from having more than one "courtesy" van at the airport terminal at any time.

Car rental companies located at the airport also pay a ten percent fee to the Authority. The on-airport companies rent counter space and parking spaces from the Authority, and they enjoy the accompanying exposure to walkup customers.

Alamo, alleging violations of the equal protection, commerce, and due process clauses of the Constitution, and the due process clause of the Florida Constitution, obtained an injunction from the district court enjoining the enforcement of the Authority's resolution on the basis of the equal protection claim. This court, how-

ever, reversed on the equal protection claim, and remanded to the district court for consideration of Alamo's due process and commerce clause claims. *Alamo Rent–A–Car v. Sarasota–Manatee Airport Auth.*, 825 F.2d 367 (11th Cir.1987). The district court concluded that the resolution violated neither the commerce clause, nor due process.

## II. COMMERCE CLAUSE

Alamo challenges the Authority's resolution, asserting that the regulations violate the commerce clause of the Constitution. We will first consider the fees charged Alamo by the Authority.

■ The general rule governing commerce clause review of state statutes is that

[w]here the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.

*Pike v. Bruce Church, Inc.*, 397 U.S. 137, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970).

■ Unquestionably, maintenance of the airport facility is a legitimate local public interest. Indeed, assuring an adequate airport facilitates rather than burdens interstate commerce. *Cf. Evansville–Vanderburgh Airport Auth. Dist. v. Delta Airlines*, 405 U.S. 707, 92 S.Ct. 1349, 1354, 31 L.Ed.2d 620 (1972) ("[A] charge designed only to make the user of state-provided facilities pay a reasonable fee to help defray the costs of their construction and maintenance may constitutionally be imposed on interstate and domestic users alike.... The facility provided at public expense aids rather than hinders the right to travel. A permissible charge to help defray the cost of the facility is therefore

not a burden in the constitutional sense."). Furthermore, any burden on interstate commerce is incidental rather than deliberately imposed. No greater fee is levied on interstate travel as distinguished from intrastate travel.

The Court has noted that user fee cases are not measured by the same standard as general revenue tax cases, although in either case one of the purposes of the collection of money is to provide revenue for the collecting entity. In the case of a user fee, however, the revenue collection provides for certain services or benefits to the user. *Commonwealth Edison Co. v. Montana*, 453 U.S. 609, 620–23 & n. 12, 101 S.Ct. 2946, 2955–56 & n. 12, 69 L.Ed.2d 884 (1981).[1] The Court has declared that because user fees "are purportedly assessed to reimburse the State for costs incurred in providing specific quantifiable services, [the court has] required a showing, based on factual evidence in the record, that 'the fees charged do not appear to be manifestly disproportionate to the services rendered....' " 453 U.S. at 622–23 n. 12, 101 S.Ct. 2956 n. 12 (quoting *Clark v. Paul Gray, Inc.*, 306 U.S. 583, 599, 59 S.Ct. 744, 753, 83 L.Ed.2d 1001 (1939)).

### A. *User Fees*

■ In evaluating whether a user fee contravenes the commerce clause, we follow the Supreme Court's analysis in *Evansville–Vanderburgh Airport Authority District v. Delta Airlines:* first, the fee charged must "reflect a fair, if imperfect, approximation of the use of facilities for whose benefit they are imposed," 405 U.S. at 717, 92 S.Ct. at 1355; second, the fee must not "be excessive in relation to costs incurred by the taxing authorities." *Id.* at 719, 92 S.Ct. at 1357.

---

**1.** The Court in *Commonwealth Edison Co. v. Montana*, accepting the State's characterization of its coal severance fee as a general revenue tax, explicitly declined to apply the tests delineated by the Court in evaluating user fees or "taxes" "designed and defended as a specific charge imposed by the State for the use of state-owned or state-provided transportation or other facilities and services." 453 U.S. at 621, 101 S.Ct. at 2955. The Authority in the instant case, however, relies on the user fee justification, and accordingly we must apply the relevant constellation of cases concerning user fees to which the Court directs attention in *Commonwealth Edison Co. v. Montana.*

### 1. Fair Approximation of Use

■ Alamo contends that the only "use" it makes of the airport is to drive on the airport roads in order to pick up customers. Therefore, Alamo asserts, the user fee should be limited to a pro rata road use fee. Instead, the user fee is based on the receipts Alamo obtains from its airport customers. The Authority responds that Alamo is reaping the benefit of the entire airport facility because in the absence of the airport Alamo would lose a significant portion of its business. The parties are locked in battle over whether the enjoyment of the benefits conferred by the existence of the airport can constitute "use." Because Alamo does enjoy the indirect "use" of the entire airport facility through the travelers it services, we conclude that the user fee is a fair, albeit imperfect, approximation of use.

In *Evansville–Vanderburgh Airport Authority District,* the Supreme Court held that a one dollar head tax on each enplaning passenger did not violate the commerce clause, despite the fact that it was not a perfect measure of use.[2] Here, as there, the statute does not require that all users of the airport pay the fee. In *Evansville–Vanderburgh,* myriad categories of airport users were excluded from paying the head tax, despite the fact that they "used" the airport facilities. For example, non-passengers meeting or seeing off passengers were not required to pay the head tax. The Court further stated that "since the visitor who merely sees off or meets a passenger confers a benefit on the passenger himself, his use of the terminal may reasonably be considered in the passenger's fee." 405 U.S. at 718, 92 S.Ct. at 1356. Significantly, the Court did not attach great importance to whether the fee was levied on the passenger or the airline because in either case it was the use of the airport facilities that gave rise to the obligation to pay the fee. 405 U.S. at 713–15, 92 S.Ct. at 1354.[3] Here the fee is levied against Alamo, and Alamo asserts that it is simply passing the fee on to the passenger in the form of a ten percent surcharge.

Recognizing that no formula to compute the fee for use of a state facility would be perfect, the Court made clear that so long as the fee was "based on some fair approximation of use or privilege for use, as was before us in *Capitol Greyhound* [*Lines v. Brice,* 339 U.S. 542, 70 S.Ct. 806, 94 L.Ed. 1053 (1950)], and is neither discriminatory against interstate commerce nor excessive in comparison with the governmental benefit conferred, it will pass constitutional muster, even though some other formula might reflect more exactly the relative use of the state facilities by individual users." 405 U.S. at 716–17, 92 S.Ct. at 1355.[4]

In *Capitol Greyhound,* the Court, faced with a Maryland title tax based on the cost of the vehicle, pragmatically noted that the tax "should be judged by its result, not its formula, and must stand unless proven to be unreasonable in amount for the privi-

---

**2.** In response to *Evansville–Vanderburgh,* Congress passed the Federal Anti–Head Tax Act, which prohibited levying fees on "persons traveling in air commerce or on the carriage of persons traveling in air commerce or on the sale of air transportation or on the gross receipts derived therefrom; ...." 49 U.S.C.App. § 1513(a).

The congressional action left the Court's commerce clause analysis undisturbed.

**3.** At the Evansville–Vanderburgh Airport, the fee was collected by the airline, which was permitted to retain a small percentage to offset its processing costs.

**4.** Wary of the Court's admonition in *Commonwealth Edison Co. v. Montana* to avoid reliance on general revenue tax cases when adjudicating a user fee case, we note that the Court itself in *Evansville–Vanderburgh,* a proto-typical user fee case, found *Capitol Greyhound* pertinent. Furthermore, *Capitol Greyhound* involved a tax that was construed as being for the purpose of compensating the state for the privilege of using the state's roads. 339 U.S. at 543–44, 546–48, 70 S.Ct. at 807, 809.

The Supreme Court continues to apply *Evansville–Vanderburgh* and its incorporated reference to *Capitol Greyhound* in the user fee context, although *Capitol Greyhound* is now doubtful authority in the road tax realm. *See American Trucking Ass'ns, Inc. v. Scheiner,* 483 U.S. 266, 107 S.Ct. 2829, 2843–44, 97 L.Ed.2d 226 (1987) (contrasting neutral $1 fee with flat tax that discriminated against out-of-state vehicles). *But see Scheiner,* 483 U.S. at 298–99, 107 S.Ct. at 2848 (Justice O'Connor stating in dissent that the majority was overruling holding of *Capitol Greyhound*).

lege granted." 339 U.S. at 545, 70 S.Ct. at 808. There the bus company, cleaving to a position similar to that espoused here by Alamo, argued that the tax "should be forbidden by the commerce clause because it varies for each carrier without relation to road use." 339 U.S. at 545, 70 S.Ct. at 808. Although Maryland also imposed a mileage tax, the Court suggested that even where the state ignores "such a key factor as mileage," the statute can withstand commerce clause scrutiny. 339 U.S. at 547, 70 S.Ct. at 809. The Court was concerned that the administrative costs of perfect fairness would be exorbitant:

> Complete fairness would require that a state tax formula vary with every factor affecting appropriate compensation for road use. These factors, like those relevant in considering the constitutionality of other state taxes, are so countless that we must be content with "rough approximation rather than precision." Each additional factor adds to administrative burdens of enforcement, which fall alike on taxpayers and government.

339 U.S. at 546–47, 70 S.Ct. at 809 (citation and footnote omitted).

The Court tested its ruling by the touchstone of its "general rule that taxes like [the Maryland vehicle cost title tax] are valid unless the amount is shown to be in excess of fair compensation for the privilege of using state roads." *Id.* We also use that touchstone to decide whether the fee charged Alamo is in excess of fair compensation for the privilege of picking up passengers at the airport.

Alamo argues that the fee charged cannot be a fair approximation of its use of the airport because the amount of the fee varies in proportion to the revenue generated by Alamo's airport customers. Proffering the example of two twins who arrive at the airport on the same day, Alamo notes that if one twin rents a car for only one day whereas the other twin rents a car for seven days, although each twin has made equal use of the airport, one is charged a much larger user fee than the other (based on the total rental car bill); therefore, Alamo submits, the fee does not (and cannot be construed to) represent a fair approximation of Alamo's use of the airport.

In light of *Evansville–Vanderburgh* and *Capitol Greyhound,* however, we must disagree. In *Capitol Greyhound,* the title fee charged varied with the cost of the vehicle, not the use of the roads; nevertheless, the Court upheld the statute against a commerce clause challenge. In *Evansville–Vanderburgh,* the Court emphasized that so long as the charge was based on some "fair approximation of use or privilege for use" and is not "excessive in comparison with the governmental benefit conferred, it will pass constitutional muster, even though some other formula might reflect more exactly the relative use of the state facility by individual users." Although imprecise in particular applications, the Authority's decision to measure Alamo's use of the airport facility by the gross receipts generated from Alamo's airport customers is not irrational. The Authority could reasonably conclude that the ten percent fee on average represents Alamo's use of the airport facility. It stands to reason that *in general* the more money Alamo makes from airport passengers, the more trips Alamo has made to the airport.[5] Admittedly, the formula is imperfect; it is not, however, an *unfair* approximation.

Furthermore, the "benefit conferred" language of *Evansville–Vanderburgh* suggests that a broad construction of use is appropriate where the benefit derived by the user depends on the existence of the entire government-provided facility. The one dollar head charge, although not necessarily related to actual use of particular airport facilities, survived challenge. A jumbo jet departing in bad weather with one passenger will pay a much smaller

---

5. This court in its previous opinion concerning Alamo's equal protection claim noted that the user fee schedule is "well tailored" to reflect the "different benefits the various … users received from the airport." 825 F.2d at 371. "For example, the fee applicable to off-airport car rental companies is ten percent of the revenue attributable to customers who arrive at these companies' places of business in a courtesy vehicle. Thus, car rental companies that rarely obtain passengers from the airport pay a low fee." *Id.* at 371 n. 4.

"user fee" than a fully loaded small jet taking off under clear skies, despite the fact that the jumbo jet has created more wear and tear and has required the use of sophisticated airport navigational aids. *Cf.* 405 U.S. at 717–19, 92 S.Ct. at 1356 (distinguishing between light private aircraft and heavier commercial aircraft). Similarly, although the two "twins" may pay a fee that does not exactly measure each's actual use of the airport facility, that does not in and of itself make the fee a violation of the commerce clause.

Our approach here is consonant with *Toye Bros., Yellow Cab v. Irby*, 437 F.2d 806 (5th Cir.1971),[6] where the court held that a fee of ten percent of a taxi cab company's gross receipts for access to the airport was not excessive and did not violate the commerce clause, despite the fact that others having access to the airport paid a flat fee. There, as here, the fee charged varied with the money obtained by virtue of the carrier's access to the airport, rather than in strict relation to the carrier's use of the physical airport facilities.

The Supreme Court precedent is clear, and we must follow it, notwithstanding any cases to the contrary decided in other circuits. Alamo argues that it is being charged for the business benefit it derives from the airport's existence, that such a fee violates the commerce clause, and that the Ninth Circuit has rejected "business benefit" as a fair approximation of use. *See Western Oil and Gas Ass'n v. Cory*, 726 F.2d 1340 (9th Cir.1984), *aff'd by an equally divided Court*, 471 U.S. 81, 105 S.Ct. 1859, 85 L.Ed.2d 61 (1985). *Cory* does not control the disposition of this case because of the strikingly different facts here.

In *Cory*, the state charged "rent" based on the volume of oil passing through an oil company pipeline located on state land. In applying the same Supreme Court precedents as we do here, the Ninth Circuit noted that it "was undisputed that the lands leased to plaintiffs are unimproved

and that no services or facilities are provided by the State in conjunction with the lease." 726 F.2d at 1344. In contrast, Alamo is receiving the use of improved airport facilities, including roads upon which its vans travel.

In sum, the user fee is a fair, albeit rough, approximation of Alamo's "use" of the airport.

### 2. Reasonableness of Fees in Relation to Costs

■ Having determined that the fee against Alamo is assessed as a fair approximation of use, we must consider whether the fees nevertheless are excessive in relation to costs incurred by the Authority. *See Evansville–Vanderburgh v. Delta Airlines*, 405 U.S. at 719–21, 92 S.Ct. at 1357. Alamo argues that because it is conceded that its vehicles comprise no more than one percent of the airport vehicular traffic, Alamo should pay at most one percent of the airport's operating expenses. Even were we to adopt that approach, the relevant measure would not be what percentage Alamo comprises of the total vehicular traffic, but rather what percentage Alamo comprises of those vehicular users that the Authority has decided to charge. As discussed above, the fact that different users are charged different fees or that certain users are not charged at all does not invalidate the scheme. *See Evansville–Vanderburgh*, 405 U.S. at 715–19, 92 S.Ct. at 1355–56 (majority of airport users exempted from fee in whole or in part).

Alamo argues that the Authority can only "recoup" expenditures, thus implying that the Authority is restricted to seeking reimbursement for funds already expended to build and maintain the airport facility, and that the Authority is forbidden from levying a fee to fund future development. Alamo, however, misconstrues the nature of the benefit conferred. While it is true that the Authority was retaining earnings during fiscal years 1982 and 1983, the Authority was contemplating an expansion of

---

**6.** The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

the airport facility in accordance with the Master Plan Report, and the financial projections supplied the Authority reflected that, after factoring in debt service on the Authority's bonds and other operating expenses, the income generated by the off-airport rental car concession would be no more than 4.66% of the Authority's total operating expenses by fiscal year 1988.

We note that in *Evansville–Vanderburgh*, the Supreme Court approved consideration of bond costs in conducting its analysis of the relation of fees to costs. *See* 405 U.S. at 719–21, 92 S.Ct. at 1357. Further, we believe that given the long term nature of maintaining and developing an airport, it was appropriate for the Authority to factor in future development plans when setting user fees. To ignore the future expense of developing and expanding the airport to meet increased demands, would increase rather than mitigate burdens on interstate commerce. *See* 405 U.S. at 713–15, 92 S.Ct. at 1354 (fee may defray construction and maintenance costs of state-provided facility). Accordingly, we conclude that the fee charged Alamo was not excessive in relation to the cost borne by the Authority in providing the facility.

### B. *Single Van Restriction and Reservation Requirement*

■ The resolution prohibits Alamo from having more than one van on the airport premises at a time, and Alamo argues that the resolution thus unduly burdens interstate commerce. Although Alamo may be adversely affected, the commerce clause "protects the interstate market, not particular firms, from prohibitive or burdensome regulations." *Executive Town and Country Services v. City of Atlanta*, 789 F.2d 1523, 1526 (11th Cir.1986) (quoting *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 127–28, 98 S.Ct. 2207, 2215, 57 L.Ed.2d 91 (1978)). The single van restriction was designed to avoid the local problem of courtesy van congestion at the airport, and the restriction poses no more than an incidental burden on interstate commerce. We do not believe that the "burden imposed on such commerce is clearly excessive in relation to the putative local benefits ...," *Pike v.*

*Bruce Church, Inc.*, 397 U.S. at 142, 90 S.Ct. at 847 (citation omitted), and we note that "the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities." *Id.* Following the analysis laid out in *Executive Town and Country Services*, we conclude that the single van restriction imposes only a minimal burden on interstate commerce, at most requiring deplaning passengers who want to rent an off-airport car to wait a little longer for the van to pick them up. Moreover, the single van restriction's purpose is to ameliorate the problem of traffic congestion, and the restriction is neatly tailored to do just that. Alamo has not proffered a plan to reduce curbside traffic snarls that is less burdensome on "interstate activities." Accordingly, we conclude that the single van restriction does not offend the commerce clause.

■ The reservation requirement, however, does run afoul of the commerce clause. Although the burden on interstate commerce created by the reservation requirement is not great, we can discern no local purpose that the requirement is designed to serve, nor are "putative local benefits" proffered by the Authority. The Authority contends that the burden is slight, that Alamo has not been inconvenienced, and that customers can easily make a reservation from a phone located in the airport terminal. Although those assertions may well be true, in the complete absence of any local purpose whatsoever relied upon by the Authority, we must conclude that the burden on interstate commerce is excessive. *See Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 101 S.Ct. 715, 728–29, 66 L.Ed.2d 659 (1981); *Pike v. Bruce Church, Inc.*, 397 U.S. at 142, 90 S.Ct. at 847; *Executive Town and Country Services*, 789 F.2d at 1526–27.

### III. DUE PROCESS

■ The district court properly concluded that Alamo's claim that the ten percent fee violates due process was foreclosed by

the prior panel opinion of this court where, in analyzing Alamo's equal protection claim, we held that the fee was rationally related to a legitimate state interest. 825 F.2d at 373–74. A regulation rationally related to a legitimate government purpose under equal protection will almost always meet the rational basis test of due process. *See Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 470 n. 12, 101 S.Ct. 715, 727 n. 12, 66 L.Ed.2d 659 (1981) (Minnesota law which does not violate equal protection *a fortiori* does not violate Fourteenth Amendment due process); *Executive Town & Country Services*, 789 F.2d at 1528. We need not repeat what was said in the prior panel opinion; given the rational relationship to a legitimate state interest, in this case the ten percent fee does not violate substantive due process.

We must also address Alamo's contention that being excluded from competitive bidding for an on-airport location violated the standard of "fair play" exacted by substantive due process under the United States and Florida Constitutions.[7] In support of its position Alamo directs our attention to three cases, none of which is persuasive. First, Alamo asserts that the Authority's "lock out" violated the overarching standard of "fair play" required by *Galvan v. Press*, 347 U.S. 522, 74 S.Ct. 737, 98 L.Ed. 911 (1954). In *Galvan*, however, the Court deferred to Congress' authority to regulate aliens entering the United States; that case provides no relevant yardstick against which to measure the alleged violation of "fair play" in this context. Next Alamo turns to a pair of Florida cases in support of its claim that the Authority's actions violate the due process clause of the Florida Constitution, Article I, section 9: *Department of Insurance v. Dade County Consumer Advocate's Office*, 492 So.2d 1032 (Fla.1986) and *Liquor Store v. Continental Distilling Corp.*, 40 So.2d 371 (Fla.1949). These cases are entirely inapposite. In *Department of Insurance*, the Florida Supreme Court struck down a Florida statute that prohibited insurance agents from accepting lower commissions from their customers than the commission set by the insurer; the court reasoned that the statute "unnecessarily limit[ed] the bargaining power of the consuming public...." 492 So.2d at 1033. Here the consuming public continues to have a choice between on-airport and off-airport sources of rental cars, and we do not see how the exclusion of Alamo from the opportunity to bid competitively for an on-airport concession restricts the right of the *consumer* to bargain with the rental car company. *Liquor Store* is no more helpful to Alamo as it involved a "price fixing statute" to maintain retail prices; our attention has not been directed to any part of the record to support a conclusion that rental car prices in the Sarasota–Bradenton area have been "fixed."

In the absence of any authority to the contrary, we conclude that the Authority's failure to hold competitive bidding for the on-airport concessions prior to imposing the user fee did not violate the due process clause of either the United States or Florida Constitutions.

## IV. CONCLUSION

The Authority's resolution imposing on Alamo a fee of ten percent of gross receipts derived from airport customers does not violate the due process clause of the Florida or United States Constitution, nor does it violate the commerce clause of the United States Constitution. The resolution's single van restriction is rationally related to a valid local purpose, mitigating airport traffic congestion, and is, therefore, acceptable under the commerce clause. The reservation requirement, however, serves no local purpose, and therefore violates the commerce clause as it burdens interstate commerce without any local interest to balance the scales. Accordingly, the district court is AFFIRMED, except insofar as it ruled that the resolution's

---

**7.** The Authority contends that Alamo has abandoned its claim under the Florida Constitution for failure to raise the issue in its brief. We are constrained, however, on the basis of Alamo's citation of Florida constitutional authorities, to disagree, although the bare citations are slender reeds upon which to hang an entire constitutional argument.

reservation requirement did not violate the commerce clause. The case is REMANDED for further proceedings consistent with this opinion.