[No. 73766-5. En Banc.]
Argued February 24, 2004. Decided November 18, 2004.

DOUGLAS M. BRANSON, *Petitioner*, v. THE PORT OF SEATTLE, *Respondent*.

*Arthur C. Claflin, Spencer Hall,* and *W. Scott Zanzig* (of *Hall Zanzig Claflin McEachern, P.L.L.C.*), for petitioner.

*Phillip H. Ginsberg* and *Carl J. Marquardt* (of *Stokes Lawrence, P.S.*); and *Paul M. Bintinger* (of *Port of Seattle Legal Department*), for respondent.

*Stephen A. Smith, Thomas R. Devine,* and *Patricia A. Hahn* on behalf of Airports Council International—North America, amicus curiae.

BRIDGE, J. — Douglas Branson sued the Port of Seattle (Port), claiming that airport concession fees charged to rental car companies conducting business at Seattle Tacoma International Airport (Sea Tac) violate the 1945 Revised Airports Act (RAA), chapter 14.08 RCW. Specifically, he asserts that the concession fees deny the public equal and uniform use of airport property. He also contends that the concession fees are not uniform for the same class of service, they are unreasonable, and they were not established with due regard to the property used and the expense of airport operation. Branson seeks both declaratory relief and damages.

We conclude that the airport concession fees at issue in this case do not deny the public equal and uniform use of the airport because the fees in no way impact *public* use of airport property. We also conclude that because the airport fees at issue here are only those that the Port charges *to concessionaires*, Branson has not established that he has standing to challenge the reasonableness, uniformity, or basis for establishing the fees themselves. In addition, Branson has not shown that declaratory judgment in his favor would be appropriate given limitations imposed under the Uniform Declaratory Judgments Act (UDJA), chapter 7.24 RCW.

# I

## Facts and Procedural History

The Port operates Sea Tac as a self-sustaining business unit of the Port. Sea Tac's largest source of revenue is its contract with the airlines. The second largest source of revenue is "landside or 'ground access' operations," which include concessionaire contracts with rental car companies. Clerk's Papers (CP) at 819.

There is limited space for operation of rental car facilities at Sea Tac, so rental car companies must compete for space in a public bidding process. Five companies become full service providers, four become limited service providers, and the rest may become off-airport concessionaires. Full service providers rent both counter space in the airport building and airport garage space to park and maintain their cars. Limited service providers rent counter space in the terminal building but do not rent space in the airport parking garage, so their customers must take a shuttle to an off-site location to pick up a rental car. Off-airport rental car providers do not maintain either counter space or garage space at the airport; those providers pick up customers at the airport and drive them to another location to complete the car rental transaction. Only the limited service contracts are at issue in this case.

The limited service providers pay the airport a fixed rent for use of counter space at the airport, plus a concession fee of 10 percent of their gross airport revenues. In contrast, full service providers pay a higher rent for their more extensive use of airport property, along with 10 percent of their gross airport revenues. Off-airport rental car providers pay a fee of 4 percent of monthly airport revenues in excess of $40,000 plus a per trip charge for shuttle pickups.

Before 1998, the Port's contracts with rental car companies included a provision prohibiting the companies from separately adding fees to a customer's bill based on concession fees or any other airport charge. Therefore, before

1998, rental car bills did not include a line item attributing part of the customer's bill to airport fees. In 1997, Dollar Rent A Car objected to this provision on First Amendment grounds. The Port concluded that the company's objection was reasonable and has since included a provision in its rental car concession contracts stating that "[t]he Port does not require but will not prohibit this pass through of the Concession Fee to Airport Customers." CP at 1068, 822. The contracts also now include conditions for disclosing information about the pass through to customers.

Douglas Branson is a resident of Pennsylvania who regularly travels to Seattle. He rented cars from limited service rental car providers five times during the period of 1998-2000. On each occasion, his bill included a separate line item charge to cover the concession fee paid to Sea Tac.

Branson brought a class action lawsuit against the rental car companies and the Port, claiming that the concession fees charged by the Port violate the RAA's requirement that airport fees allow for uniform public use of airport property. *See* RCW 14.08.120(6). He also claimed that the Port's concession fees are not uniform, reasonable, or established with due regard to the property used and the expense of its operation. Finally, Branson argued that the rental car companies' practice of passing the fees through to customers violates the Consumer Protection Act (CPA), chapter 19.86 RCW. The parties stipulated to postpone class certification until the court ruled on summary judgment motions. The parties later stipulated to dismissal of the claims against the rental car companies. The trial court then granted the Port's motion for summary judgment, finding that the Port's 10 percent concession fee, charged to the rental car companies, is authorized by RCW 14.08.120 as a matter of law.

Branson appealed. The Court of Appeals affirmed, concluding that the Port's 10 percent concession fee complies with RCW 14.08.120(6), which provides that airport fees may not deny the public of equal and uniform use of airport property and requires that airport fees be reasonable and

uniform for the same class of service. *Branson v. Port of Seattle*, 115 Wn. App. 695, 697, 63 P.3d 830 (2003).

## II

## Analysis

█ On appeal from summary judgment, this court engages in the same inquiry as the trial court. *Okeson v. City of Seattle*, 150 Wn.2d 540, 548, 78 P.3d 1279 (2003). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Clark v. Baines*, 150 Wn.2d 905, 910-11, 84 P.3d 245 (2004). This court reviews issues of statutory interpretation de novo. *Okeson*, 150 Wn.2d at 548-49.

The RAA authorizes a municipality to raise funds for the operation of its airport. RCW 14.08.100(1). The act specifically authorizes municipalities:

[t]o determine the charges or rental for the use of any properties under its control and the charges for any services or accommodations, and the terms and conditions under which such properties may be used: *PROVIDED, That in all cases the public is not deprived of its rightful, equal, and uniform use of the property. Charges shall be reasonable and uniform for the same class of service and established with due regard to the property and improvements used and the expense of operation to the municipality.*

RCW 14.08.120(6) (emphasis added).[1] Additionally, the legislature directed the courts to interpret the RAA "to make uniform so far as possible the laws and regulations of

---

[1] The Washington statute is similar to many others in effect around the nation. *See, e.g.*, N.C. Gen. Stat. § 63-53(5) (2003) (requiring uniform public use of airport property and reasonable and uniform fees set with due regard to the property used and the expense of its operation); *see also* Alaska Stat. § 02.15.090(a) (2002) (same); Del. Code Ann. tit. 2, § 706 (2001) (same); Md. Code Ann., Transp. § 5-408(b)(1) (2003) (same); Miss. Code Ann. § 61-3-21(1) (2003) (same); N.D. Cent. Code § 2-06-11(1) (2003) (same); Or. Rev. Stat. § 836.055(2) (2003) (same); S.D. Codified Laws § 50-6A-38 (Michie 2003) (same); Tenn. Code Ann. § 42-3-112(2) (2003) (same).

this state and other states and of the government of the United States having to do with the subject of aeronautics." RCW 14.08.340.

██ ██ As an initial matter, Branson argues that any interpretation of the RAA depends in part upon whether the power to set concession fees is governmental or proprietary. Generally, a municipality acts in either a governmental or proprietary capacity. *Okeson*, 150 Wn. 2d at 549. The principal test for determining whether a function is governmental or proprietary is "whether the act performed is for the common good of all, or whether it is for the special benefit or profit of the corporate entity." *Id.* at 550. If this court classifies a statutorily granted municipal power as proprietary, then the extent of that municipal power can be liberally construed. 2A EUGENE McQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 10.22, at 378 (Dennis Jensen & Gail O'Gradney eds., 3d ed. rev. vol. 1996). If a municipal function is governmental in nature, then "less opportunity exists for invoking the doctrines of liberal construction and of implied powers." *City of Tacoma v. Taxpayers of City of Tacoma*, 108 Wn.2d 679, 694, 743 P.2d 793 (1987).

██ The acts of setting airport fees and entering into contracts are generally considered to be proprietary functions. *See, e.g., Hite v. Pub. Util. Dist. No. 2*, 112 Wn.2d 456, 460, 772 P.2d 481 (1989); *Alamo Rent-A-Car, Inc. v. Bd. of Supervisors*, 221 Cal. App. 3d 198, 205, 272 Cal. Rptr. 19 (1990); *Jacksonville Port Auth. v. Alamo Rent-A-Car, Inc.*, 600 So. 2d 1159, 1164 (Fl. Dist. Ct. App. 1992). However, the specific powers granted in the RAA have been declared by the legislature to be governmental in nature. RCW 14.08.020 ("the . . . operation of airports and other air navigation facilities, and the exercise of any other powers herein granted to municipalities, are hereby declared to be public, *governmental*, county and municipal functions, exercised for a public purpose" (emphasis added)). While governmental powers may not be liberally construed, *Taxpayers of City of Tacoma*, 108 Wn.2d at 694, the RAA authorizes the municipality to exercise all powers necessarily incidental to the powers

enumerated in RCW 14.08.120. RCW 14.08.120(7). Thus, even if the operation of airports were a governmental function in Washington limiting our ability to liberally construe the authority available to a municipality under RCW 14.08.120, the statute itself contemplates that some powers are implied.

Furthermore, if the method for exercising a municipal power is not specifically prescribed, *the mode or means* by which a municipality may exercise powers granted by the legislature will not be strictly construed. *See Taxpayers of City of Tacoma*, 108 Wn.2d at 692. There is a "range of reasonableness within which a municipality's manner and means of exercising [its] powers will not be interfered with or upset by the judiciary." 2A McQuillin, *supra*, § 10.18.10, at 366. Here, the legislature has not prescribed the specific means by which municipalities must set airport concession fees. *See* RCW 14.08.120(6). Therefore, the Port has discretion to set airport fees in the manner it chooses, so long as the resulting fees comply with the basic limitations set forth in RCW 14.08.120(6).

It is in this statutory context that we analyze Branson's specific claims. Branson challenges the Port's practice of entering into contracts with rental car companies wherein the companies agree to pay a concession fee of 10 percent of the gross revenues arising from airport customer rentals.[2] He attacks the validity of airport concession fees based on two provisions within RCW 14.08.120(6). First, he claims that the fees deny the public equal and uniform use of airport property. RCW 14.08.120(6) (the "equal and uniform public use" provision). Second he claims that the fees are

---

[2] The Port has concluded that it cannot prohibit the rental car companies from recouping these fees from customers or from including the concession fee recoupment charge as a separate line item on rental car bills. The dismissal of the claims against the rental car companies has not been challenged and their practice of passing the concession fee expense through to customers is no longer an issue in this case. In addition, rental car customers have previously argued that the rental car companies' practice of charging customers separately for airport concession fees violates the CPA. *Robinson v. Avis Rent A Car Sys.*, 106 Wn. App. 104, 108-09, 22 P.3d 818 (2001), *review denied*, 145 Wn.2d 1004 (2001). In *Robinson*, the Court of Appeals rejected this claim. *Id.* at 123.

not uniform, reasonable, or established with due regard to the property and improvements used and the expense of airport operation. RCW 14.08.120(6) (the "reasonable and uniform" provision).

## A. Equal and Uniform Public Use

The RAA states that airport fees must not deprive the public of equal and uniform use of airport property. RCW 14.08.120(6). This is the only relevant provision that refers explicitly to the impact of airport charges on members of the public, regardless of who is actually charged the fee. *See id.* Branson claims that because the rental car companies recoup the expense of the concession fee by charging customers 10 percent on each transaction, a customer who rents a car for a long period of time must pay more towards recoupment of the concession fee (because his total bill is more expensive) than a customer who rents a car for a short period of time. Because these customers use the airport in identical ways, Branson asserts that airport customers are therefore charged different rates for the same use of airport property in violation of RCW 14.08.120(6).

Branson's argument fails to take into account the fact that the Port charges rental car companies concession fees for *the companies'* use of airport property. CP at 819-20; *see also Alamo Rent-A-Car, Inc. v. Sarasota-Manatee Airport Auth.*, 906 F.2d 516, 520 (11th Cir. 1990) (recognizing that the 10 percent fee represents *the car rental company's* use of the airport facility). The fees are imposed to compensate for the burden of rental car companies' use of airport property and the benefit that the airport brings to the companies in the form of access to a market of potential customers. *See, e.g., Enter. Leasing Co. v. Metro. Airports Comm'n*, 250 F.3d 1215, 1220-21 (8th Cir. 2001). While the rental car companies are permitted to recoup the expense of the airport concession fees by passing them through to their customers, the Port does not require the companies to do so. CP at 1068, 822. Most importantly, Branson points to

nothing in the record that indicates that the airport charges rental car concession fees to compensate for *airport customers'* use of the airport. Airport customers who pay the companies' recoupment charge are not paying for their own use of airport property. Rather, they are indirectly paying for the rental car companies' use of airport property, but only because the rental car companies choose to pass this expense through to their customers. Thus, the "equal and uniform public use" provision is not implicated by airport rental car concession fees. *See* RCW 14.08.120(6).

Additionally, the plain language of the statute requires only that the public enjoy equal and uniform use of *airport* property. *See* RCW 14.08.120(6). Branson has not made it clear how an airport customer's *use of the airport* is restricted by the rental car company concession fee. Although the recoupment charge imposed by the rental car companies may make customer payments for *rental cars* variable, rental cars are not airport property. Branson has not shown that the recoupment charge imposed by the rental car companies impacts the airport customers' use of airport property.

Perhaps to address this problem, Branson notes that an airport customer who leaves the airport in a hotel shuttle, rather than a rental car, pays no specific recoupment fee. He argues that because a shuttle customer arguably engages in the same use of the airport but pays no recoupment charge, rental car customers are deprived of equal and uniform use of the airport.[3] However, the Port does charge a fee to airport shuttle services, CP 877-79, but those businesses apparently have not chosen to pass those fees through to customers in the form of a line item on each customer's bill. *See* Suppl. Br. of Resp't at 5. In contrast, rental car companies have chosen to pass their fees through

---

[3] Branson presents no evidence that shuttle customers and limited service rental car customers use the airport in an identical way. The customers of limited service rental car providers utilize the counter space at the airport. CP at 820. But Branson has not shown that shuttle customers also utilize airport counter space.

to the customer, but the Port does not mandate or control this practice. CP at 1068, 822.[4]

Branson also relies on a 1992 attorney general opinion, which provides an example describing two customers who receive identical services from two rental car companies but for whom *the companies* would be charged different amounts based on the duration of the car rental. 1992 Op. Att'y Gen. No. 18, at 6. Because the attorney general opinion clearly refers to uniform treatment of businesses, rather than individual airport customers, it is unclear how the opinion relates to Branson's current argument that the concession fees are not uniform with regard to individual customers. More fundamentally, the attorney general opinion cites to no authority to support its reading of the RAA. *Id.* at 5-6.[5]

Therefore, Branson has failed to establish that the Port's concessions fees deny the public equal and uniform use of the airport in violation of RCW 14.08.120(6). The Port does

---

[4] Several courts have rejected lack of uniformity arguments based on the disparity between rental car concession fees and fees charged to shuttle services. *See Allright Colo., Inc. v. City & County of Denver*, 937 F.2d 1502, 1512-13 (10th Cir. 1991) (finding rational basis existed for different fees); *Alamo Rent-A-Car, Inc. v. Sarasota-Manatee Airport Auth.*, 825 F.2d 367, 370-71 (11th Cir. 1987) (upholding different charges in the face of an equal protection challenge where a rational basis existed for the difference in fees).

[5] In the context of his "equal and uniform public use" argument, Branson seems to contend that the Port's concession fee system conflicts with *Okeson*, 150 Wn.2d 540. In 1999, the City of Seattle passed an ordinance that shifted the cost of streetlight operation from Seattle's general budget to Seattle City Light customers. *Id.* at 543. In *Okeson*, this court applied the test set forth in *Covell v. City of Seattle*, 127 Wn.2d 874, 905 P.2d 324 (1995) and determined that the ordinance imposed a tax, rather than a regulatory fee. *Okeson*, 150 Wn.2d at 551-54. Branson claims the airport concession fees in this case similarly are not valid regulatory fees. However, municipalities may charge fees that are not purely regulatory in nature. Hugh D. Spitzer, *Taxes vs. Fees: A Curious Confusion*, 38 GONZ. L. REV. 335, 343-49 (2003) (discussing commodity charges and burden offset charges). *See also Teter v. Clark County*, 104 Wn.2d 227, 232, 704 P.2d 1171 (1985) (recognizing that a county may charge for contribution to increased surface water runoff); *Twitchell v. City of Spokane*, 55 Wash. 86, 89, 104 P. 150 (1909) (explaining that when paying a water rate, the consumer pays for a "commodity which is furnished for his comfort and use"). Fees for access to or use of a public facility can be characterized as a commodity charge. *See* Spitzer, *supra*, at 344. The fees at issue here are, at least in part, commodity charges because concessionaires, including rental car companies, pay the fees in return for access to and use of airport property. Thus, they do not suffer the same fate as the charges analyzed in *Okeson*.

not charge the concession fees to members of the public and the Port's concession fees in no way limit the public's use of airport property.

## B. Reasonable and Uniform Charges

 The "reasonable and uniform" provision of the RCW 14.08.120(6) requires that airport charges be "reasonable and uniform for the same class of service and established with due regard to the property and improvements used and the expense of operation to the municipality." RCW 14.08.120(6). The only fees at issue in this case are those that the Port charges to the rental car *companies*; as stated above, the Port does not charge concession fees to rental car *customers*. While the Port has concluded that it cannot legally prevent rental car companies from recouping their concession fees from their individual customers, the Port does not endorse the practice, let alone require it. CP at 1068, 822. It is the rental car company that ultimately decides if the concession fees will be recouped through a line item charge on its customers' bills. *Id*. Therefore, we question whether Branson has standing to pursue a claim against the Port based on the "reasonable and uniform" provision and whether he may do so in a case that no longer includes the airport rental car companies as parties.[6]

 This court has established a two-part test for determining whether a party has standing to bring a particular action. *Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake*, 150 Wn.2d 791, 802, 83 P.3d 419 (2004) (*Grant County II*); *1519-1525 Lakeview Blvd. Condo. Ass'n v. Apartment Sales Corp.*, 144 Wn.2d 570, 576 n.3, 29 P.3d 1249 (2001). First, we ask whether the interest asserted is arguably within the zone of interests to be protected by the statute or constitutional guaranty in question. *Grant County II*, 150

---

[6] Although the Port does not claim that Branson lacks standing, Suppl. Br. of Resp't at 4, we may raise the issue sua sponte. *See, e.g., Johnson v. Allsteel, Inc.*, 259 F.3d 885, 887 (7th Cir. 2001); *see also High Tide Seafoods v. State*, 106 Wn.2d 695, 702, 725 P.2d 411 (1986) ("If a plaintiff lacks standing to bring a suit, courts lack jurisdiction to consider it.").

Wn.2d at 802. Second, we consider whether the party seeking standing has suffered from an injury in fact, economic or otherwise. *Id.* Both tests must be met by the party seeking standing. *Id.*; *High Tide Seafoods v. State*, 106 Wn.2d 695, 702, 725 P.2d 411 (1986) (noting that even if the plaintiffs could show adequate injury, they would fail the zone of interest test).

■ We conclude that Branson lacks standing to challenge the Port's concession fees under the "reasonable and uniform" provision because a plaintiff other than the entity that the Port actually charges is not within the zone of interests intended to be protected by that particular statutory requirement. While the plain language of RCW 14-.08.120(6)'s "equal and uniform public use" provision indicates that it is intended to protect the public by ensuring that airport fees do not deny the public equal and uniform use of airport property, the provision requiring fees to be reasonable and uniform protects only those entities to whom the Port actually charges fees. Nothing in the language of the "reasonable and uniform" provision indicates that it is intended to reach beyond fees charged by the Port. RCW 14.08.120(6). In this case, the Port does not charge fees to Branson or any other car rental customers; Branson paid a recoupment fee to the rental car companies, not the Port. Therefore, a plain reading of RCW 14.08.120(6) reveals that Branson does not fall within the zone of interests to be protected by the "reasonable and uniform" provision of RCW 14.08.120(6).[7]

---

[7] When evaluating whether a party's interests are within the zone of interests to be protected by a statute, courts often refer to the general purpose of the statute. *See, e.g., To-Ro Trade Shows v. Collins*, 144 Wn.2d 403, 414-15, 27 P.3d 1149 (2001). While the RAA declares that airports are to be built and operated for public benefit, RCW 14.08.020, we do not interpret this general purpose to reflect an intent to protect members of the public from fees charged to them by third parties like rental car companies. *Compare* RCW 14.08.020 *with To-Ro Trade Shows*, 144 Wn.2d at 414-15 (considering statute specifically intended to protect public from fraud and other abuses by vehicle dealers) and *Grant County* II, 150 Wn.2d at 802 (recognizing that the petition method of annexation was adopted "specifically to protect the interest of property owners"). The plain language of the "reasonable and uniform" provision indicates that the provision is intended to protect only the entities to which the Port actually charges fees. RCW 14.08.120(6).

■ ■ Because Branson seeks declaratory relief, we also consider the limitations of the Uniform Declaratory Judgments Act (UDJA), chapter 7.24 RCW, which governs declaratory judgments in Washington. Under the UDJA, a person whose rights, status, or other legal relations are affected by a statute may have any question of the construction of that statute determined by a court. RCW 7.24.020. In addition, the UDJA allows for an interested person to have any question arising under the validity of a contract determined, so long as the UDJA's underlying requirements are met. RCW 7.24.020. In order to have standing to seek declaratory judgment under the act, a person must present a justiciable controversy:

> "(1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) *between parties having genuine and opposing interests,* (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive."

*To-Ro Trade Shows v. Collins,* 144 Wn.2d 403, 411, 27 P.3d 1149 (2001) (emphasis added) (quoting *Diversified Indus. Dev. Corp. v. Ripley,* 82 Wn.2d 811, 815, 514 P.2d 137 (1973)). Absent these elements, the court " 'steps into the prohibited area of advisory opinions.' " *Walker v. Munro,* 124 Wn.2d 402, 411-12, 879 P.2d 920 (1994) (quoting *Diversified Indus.,* 82 Wn.2d at 815). Inherent in the justiciability determination is the traditional limiting doctrine of standing. *To-Ro Trade Shows,* 144 Wn.2d at 411; *Grant County* II, 150 Wn.2d at 802 ("This statutory right is clarified by the common law doctrine of standing, which prohibits a litigant from raising another's legal right.").

Branson has not shown that the controversy arising out of the "reasonable and uniform" provision is currently between parties having genuine and opposing interests on the issue. By challenging the validity of the Port's airport concession fees based on the reasonableness and uniformity

of the fees, Branson seems to be raising not his own legal right, but that of the concessionaires. *See Grant County* II, 150 Wn.2d at 802. Because the Port does not charge fees to rental car customers, it is not clear that Branson's interests are genuinely opposed to the Port's. In a similar vein, it seems that Branson's complaint would more properly be addressed by a claim against the rental car companies because they, not the Port, actually charged Branson the fee about which he complains.[8] In this case, Branson and the Port are not sufficiently opposed to satisfy the third justiciability requirement under the UDJA.[9]

In sum, we conclude that common law principles of standing and the justiciability requirements underlying the UDJA prevent Branson from challenging the fees based on the "reasonable and uniform" provision of the RAA. Rental car customers' interests are not within the zone of interests intended to be protected by that provision of RCW 14.08.120(6), Branson and the Port are not genuinely opposed, and without participation from the rental car companies themselves, declaratory judgment in this case would be inappropriate. Therefore, Branson has not established that he is entitled to relief under RCW 14.08.120(6).

---

[8] Branson stipulated to dismissal of his claims against the companies. CP at 1803.

[9] RCW 7.24.110 of the UDJA also suggests that declaratory judgment in this case would be improper at this time. That section requires that all parties who will potentially be affected by a declaratory judgment must be joined. *See also Treyz v. Pierce County*, 118 Wn. App. 458, 464, 76 P.3d 292 (2003) (refusing to decide a case based on RCW 7.24.110 where the plaintiff failed to join those parties with the biggest stake in the outcome of the litigation), *review denied*, 151 Wn.2d 1022 (2004). A party is a "necessary party" under RCW 7.24.110 if it is " 'one whose ability to protect its interest in the subject matter of the litigation would be impeded by a judgment' " in the current case. *Treyz*, 118 Wn. App. at 462 (quoting *Primark, Inc. v. Burien Gardens Assocs.*, 63 Wn. App. 900, 907, 823 P.2d 1116 (1992)); *N.W. Greyhound Kennel Ass'n, Inc. v. State*, 8 Wn. App. 314, 319, 506 P.2d 878 (1973) (relying on RCW 7.24.110 to dismiss where plaintiff failed to join a party whose rights would be affected by the proposed remedy). Because the rental car companies pay the fees in question, they are the very parties who would be most impacted by the current litigation. Although they were originally defendants in this action, they have never been joined as to the issue of whether the fees they pay to the Port are valid under RCW 14.08.120(6). Thus, RCW 7.24.110 also suggests that declaratory judgment in this case would be improper without the rental car companies' input as to this issue.

# III

## Conclusion

Branson challenges only the Port's practice of entering into contracts with rental car companies, under which the companies agree to pay a concession fee of 10 percent of gross revenues arising from airport rentals. The concession fees do not deprive the public of equal use of airport property. Furthermore, Branson has not established that he has standing to challenge these fees based on the "uniform and reasonable" requirement of the RAA. We affirm the Court of Appeals and dismiss Branson's claims.

ALEXANDER, C.J., and IRELAND, OWENS, and FAIRHURST, JJ., concur.

CHAMBERS, J. (concurring) — The majority concludes that Douglas Branson, a rental car customer, lacks standing to assert the putative rights of rental car companies. Standing was not argued below, nor was it argued before this court. The majority's sua sponte dismissal of Branson's claims on the basis of standing seems unnecessary as the majority proceeds to discuss and reject his claims on the merits. I concur because I would reach the same result on the grounds that Branson has not shown a cognizable injury. I write separately, however, to more fully analyze the Revised Airports Act (Airport Act), chapter 14.08 RCW.

On the record before us, the rental car companies may or may not pass the concession charges at issue on to their customers. I have difficulty seeing how this differs from other costs of doing business. I therefore conclude that because the rental car companies, and not their customers, are the ones who are charged the concession fees, Branson has failed to meet his burden of showing that he has a cognizable injury.[10] In a challenge to a 10 percent fee on

[10] I do not read the majority opinion to adopt the federal standing requirements in this case. The federal standing requirements limit a court's jurisdiction to hear

taxi concessionaires, we concluded, "[i]f anyone has been harmed by the acts of respondents (assuming their illegality) it would appear to be the operators of taxicabs licensed by King county. They are not parties to this action." *King County v. Port of Seattle*, 37 Wn.2d 338, 345-46, 223 P.2d 834 (1950). But if Branson could show, as contended by the dissent, that the rental car companies were mere conduits or agents of Seattle Tacoma International Airport (Sea Tac), I would agree with the dissent.

I also write separately to address a Port of Seattle (Port) policy not raised by the parties, but potentially implicated by the majority. Many businesses that do not have any other presence at Sea Tac use shuttle buses to pick up and drop off customers at the airport. These businesses, including hotels, restaurants, and parking lot companies near the airport are not charged a percentage of the gross income generated by airport passengers. However, rental car companies that have no connection with the airport other than picking up and dropping off customers are charged four percent of the gross income generated by airport passengers. Majority at 867. Even if a rental car company does not use the airport facilities at all, it may be required to pay the fee. If, for example, a passenger takes a cab from the airport to downtown Seattle and then decides to rent a car, the rental car company must pay four percent of the rental cost if the car is rented within 12 hours of the passenger's arrival and within 20 miles of Sea Tac.[11] As far as I can discern, there is no necessary relationship between these

certain cases. *See, e.g., Allen v. Wright*, 468 U.S. 737, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984). In Washington, however, courts' power is not similarly limited. Thus, "[w]here the question is one of great public interest and has been brought to the court's attention with adequate argument and briefing, and where it appears that an opinion of the court will be beneficial to the public and to other branches of the government, the court may exercise its discretion and render a declaratory judgment to resolve a question of constitutional interpretation." *Seattle Sch. Dist. No. 1 v. State*, 90 Wn.2d 476, 490, 585 P.2d 71 (1978) (citing *State ex rel. Distilled Spirits Inst., Inc. v. Kinnear*, 80 Wn.2d 175, 178, 492 P.2d 1012 (1972)). The majority describes Branson's failure to meet his burden of showing a cognizable injury in standing terms.

[11] This fact is according to counsel at oral argument.

charges and the property and improvements used at the airport.

The airport charges passengers who park at the airport and it charges businesses who sell food at restaurants in the airport. If it is uniform to charge a fee for a rental car rented off airport property merely because it was rented within 12 hours of arrival and 20 miles of the airport, it reasonably follows that those who rent parking spaces and sell food to passengers within 12 hours of arrival and 20 miles of the airport ought also to be charged a fee. However, under the Port's policy, restaurateurs with restaurants located at the airport can be charged a fee by the airport to sell food to passengers, but where passengers choose to take a shuttle bus to dine at a nearby hotel restaurant, the airport charges no fee to the off-site restaurant. Why, then, are those passengers who are picked up by a shuttle bus and taken to a hotel in a different class than those passengers who are picked up by a shuttle bus and taken to a rental car company to rent the car they will drive to that same hotel?

In my view, for rental car companies whose only connection to the airport is the use of shuttle buses to pick up and deliver its customers, the class of service is shuttle bus service. Pick up and delivery by shuttle bus is the class of service used by the passenger. All shuttle buses make the same use of airport property and improvements. The statute is violated when the Port sets nonuniform rates based on the nature of the business or service to which the shuttle bus takes the passenger. I disagree with the majority's reading of RCW 14.08.120(6) and therefore concur only in the result it reaches.

The Airport Act was adopted by our legislature in 1945 during a great period for aviation but before the boom of the rental car industry. The first permanent airport terminal was opened at Sea Tac on July 9, 1949. *King County*, 37 Wn.2d at 341. Since that time, the Airport Act has been interpreted to limit the Port's ability to tax and charge fees. The statute also deprives county commissioners of the

authority to make transfers from airport funds to other county funds. 1954 Op. Att'y Gen. No. 250, at 2 (citing former RCW 14.08.320, *recodified as* RCW 14.08.120). The Port cannot impose a flat charge on each passenger boarding airplanes at municipal airports operated by cities and counties. 1961-62 Op. Att'y Gen. No. 100, at 3 (citing RCW 14.08.120). The Port cannot charge fees to businesses that do not use airport property. 1992 Op. Att'y Gen. No. 18, at 2-4 (citing RCW 14.08.120(6)). The Port cannot base charges upon a percentage of gross receipts of a business that uses airport property. *Id.* at 7.

Instead, the act authorizes the Port:

[t]o determine the charges or rental for the use of any properties under its control and the charges for any services or accommodations, and the terms and conditions under which such properties may be used: PROVIDED, That in all cases the public is not deprived of its rightful, equal, and uniform use of the property. Charges shall be reasonable and uniform for the same class of service and established with due regard to the property and improvements used and the expense of operation to the municipality.

RCW 14.08.120(6). Thus, charges must be not only reasonable and uniform for the same class of service, they must also be established with due regard to the "property and improvements used."

The Port argues that charges need be only "reasonable and uniform" for the same class of services. I agree. It argues that rental car companies are a separate and distinct class and the only questions are whether the charges are reasonable and uniform among rental car companies. The class, according to the Port, is determined based upon the nature of the company's business and not the use of the airport property or improvements. The majority, without deciding, seems to agree that each different business is in a different class. I find this argument neither reasonable nor consistent with the statute. If the requirement of uniformity could be satisfied by segregating similar types of businesses into different classes, then the requirement of

uniformity could easily be circumvented. Could those who sell ice cream be charged differently than those who sell seafood? Are those who sell newspapers and magazines in a different class than those who exchange currencies?

The statute, in my view, answers these questions because the language "with due regard to the property and improvements used" modifies the word "class." A class is a group that uses airport property and facilities in the same capacity. Certainly companies that have booths and rental cars on airport property use the airport differently than companies that have only booths on airport property. Those who advertise or have direct courtesy phones to their businesses use the airport improvements differently than those who do not. But here, the class or service is shuttle bus service. Pick up and delivery by shuttle bus is the class of service used by the passenger. All shuttle buses use airport property and improvements in the same manner. There is no justification for charging different rates based upon the nature of the business or destination to which the shuttle bus delivers the passenger.

While I can imagine a meritorious challenge to the Port's administration of the Airport Act, this is not that challenge. Branson has not met his burden of showing that he is actually harmed. I therefore concur only in the result.

SANDERS, J. (dissenting) — The Port of Seattle's (Port) practice of charging rental car companies doing business at Seattle-Tacoma International Airport (Airport) a concession fee as a percentage of each company's gross receipts forces those customers to pay widely varying and inflated charges for essentially identical use of the Airport. This nonuniform fee denies the public equal and uniform use of the Airport in direct violation of the 1945 Municipal Airports Act (Revised Airports Act), chapter 14.08 RCW, a statute intended to protect captive consumers from potential abuse of a coercive government monopoly.

The Revised Airports Act permits port districts to charge fees for use of airport property, *see* RCW 14.08.120(6),

however, they are subject to specific limitations to protect captive consumers from unfair airport price gouging:

> PROVIDED, That in all cases *the public* is not deprived of its *rightful, equal, and uniform* use of the property. Charges shall be *reasonable and uniform for the same class of service* and established with due regard to the property and improvements used and the expense of operation to the municipality.

*Id.* (emphasis added). The Revised Airports Act therefore specifically prohibits the Port from depriving the public of "equal" and "uniform" use of the Airport. *Id.* It also requires fees be "reasonable and uniform for the same class of service," taking into consideration the Port's cost of operating the Airport. *Id.*

The trial court granted summary judgment of dismissal to the Port. Therefore we must view all facts and reasonable inferences in the light most favorable to Douglas Branson, the nonmoving party. *City of Lakewood v. Pierce County*, 144 Wn.2d 118, 125, 30 P.3d 446 (2001). The evidence in this case, largely undisputed, establishes the Port's practice of charging a concession fee to rental car companies doing business at the Airport based on a percentage of those companies' gross receipts.

A somewhat frequent traveler to and from the Airport, Branson rented a car on several occasions from November 1998 to December 2000. Because the rental car companies he frequented were limited service companies, his use of the Airport was essentially the same every time: he exited the plane, made his way to the courtesy shuttle staging area outside the terminal, took a shuttle to an off-Airport location and picked up his rental car. Nonetheless he never paid the same amount for the Port's concession fee. Indeed the fee he paid varied greatly based on the period of time he rented each car and its quality, from as low as $8.76 to as high as $25.53 per day. Clerk's Papers (CP) at 364-65.

Such lack of uniformity in airport fees was addressed directly in a 1992 attorney general opinion. *See* 1992 Op. Att'y Gen. No. 18. While attorney general opinions are not

binding, they are persuasive authority to which we give "great weight." *Thurston County ex rel. Bd. of County Comm'rs v. City of Olympia*, 151 Wn.2d 171, 177, 86 P.3d 151 (2004); *Bowles v. Dep't of Ret. Sys.*, 121 Wn.2d 52, 63, 847 P.2d 440 (1993). *But see Amalgamated Transit Union Legislative Council v. State*, 145 Wn.2d 544, 554, 40 P.3d 656 (2002). There the Attorney General interpreted RCW 14.08.120(6) and concluded charges based on a user's gross receipts would fail to comply with the statutory requirements of RCW 14.08.120(6). *See* 1992 Op. Att'y Gen. No. 18 at 5-7.

The Attorney General reasoned:

> Charges based on the user's gross receipts are likely to result in different charges for businesses that use airport property in the same way and to the same extent. Calculated in this way, charges would not be uniform, and would bear no relationship to the cost or operation of the property.

*Id.* at 5. The opinion cited the following example, mirroring the case at bar:

> This point can be illustrated by the following example. It is our understanding that rental car companies are among the businesses that use airport property. These rental car companies maintain offices in other locations, and use the airport's property by driving courtesy vans to and from passenger terminals to pick up and deliver their customers. Assume that the charge is to be based on a rental car company's gross receipts from customers who arrive at the airport, are transported off the airport grounds in vans operated by the company, and rent a car from the company within 24 hours of arrival. Assume further that the charge is 10 percent of these gross receipts.
>
> Company A picks up one customer at the airport on a given trip. When the customer arrives at Company A's office, she rents a car for one day at a rate of $100. The port district will charge Company A $10 for using airport property.
>
> Company B also picks up one customer at the airport on a given trip. When the customer arrives at Company B's office, however, he rents a car for ten days at a rate of $100 per day,

or $1,000 total. Company B will be charged $100, or 10 times the amount charged to Company A, by the port district for its use of airport property. Presumably, the expense to the port district of owning and operating the property used would be the same in both cases. Yet the charges assessed the two companies would differ greatly.

*Id.* at 5-6. The opinion also referenced a 1961 opinion, *see id.* at 6, wherein the Attorney General concluded a municipal authority operating an airport could not, consistent with RCW 14.08.120(6), charge a fee to only those passengers boarding an airplane but not those disembarking. 1961-1962 Op. Att'y Gen. 100 at 3. The opinion emphasized RCW 14.08.120(6)'s requirement that " 'in all cases the public is not deprived of its rightful, equal, and uniform use of the [airport] property.' " 1992 Op. Att'y Gen. at 5 (quoting RCW 14.08.120(6)).

The majority attempts to distinguish the 1992 opinion on specious grounds. According to the majority because the opinion refers to fees levied on rental car companies, rather than their customers, "it is unclear how the opinion relates to Branson's current argument that the concession fees are not uniform with regard to individual customers." Majority at 874. However, it is absolutely clear that the rental car companies do pass on the fee directly to their customers. Thus, the Attorney General's conclusion that such a non-uniform fee would violate RCW 14.08.120(6) if rental car companies were forced to pay applies with equal force here, where it is the customers who are forced to bear the cost.

A customer such as Branson who rents a car for a longer period of time from a company doing business at the Airport, or who rents a car of higher quality, pays more for the same use of the Airport than does a customer who rents a car for a shorter period of time or who rents a less expensive car. The customer's use of the airport is the same but the fee varies substantially. This deprives the public of "equal and uniform use," which RCW 14.08.120(6) expressly prohibits.

Nonetheless the majority baldly asserts a rental car customer's payment of the concession fee is not for his or her use of the Airport but instead for use by the rental car companies. Majority at 872-73. As a result, according to the majority, RCW 14.08.120(6)'s requirement that airport fees must not deprive the public of equal and uniform use of airport property is not implicated in this case. *Id.* at 873. To get there the majority makes much of the fact that the Port does not *require* rental car companies to pass the concession fee on to their customers. This assertion is, however, an exercise in self-delusion which ignores the reality that it is the customers and not the rental car companies who ultimately pay the Port's fee, as it is the consumer who pays for the product. This fee simply inflates the cost of rental cars for airport vendors above the cost for nonairport vendors. And the Port gets away with it because its monopolistic and coercive exclusive control of the airport venue makes it impractical for consumers to seek more reasonably priced alternatives at less convenient locations.

Contrary to the majority's analysis, this fee must be analyzed in the context of those who actually pay it. The statute in effect protects these consumers from the evils of government-coerced, monopolistic price gouging. That the fee calculation results in widely varying charges demonstrates the fee is not uniform and thereby violates RCW 14.08.120(6).

Additionally, the majority mistakenly asserts the Port's concession fee "in no way" limits the public's use of the Airport. Majority at 875. This belies the fact that every traveler who seeks to rent a car from a limited service car rental company doing business at the Airport finds the service marginally less available because of higher cost of the rental due to this airport fee at this controlled venue. Travelers who use the Airport in much the same way but are marginally forced to rent cars elsewhere to avoid the added expense pay no such fee; however, their choice is limited by the hassle of traveling to a remote location to seek a vendor who does not do business at the airport. This

loss of convenience is considerable. Obviously the public's use of the Airport to rent a car is limited by payment of the Port's fee as some marginal customers are priced out of the market.

Branson has established the Port's rental car concession fee deprives the public of equal and uniform use of the Airport because of the unreasonable manner in which widely varying charges are calculated. This nonuniform fee deprives the public of "equal and uniform use" of the Airport, which RCW 14.08.120(6) prohibits. The trial court's grant of summary judgment on this issue was therefore improper.

The majority's attempt to dispose of Branson's claims under the "reasonable and uniform" provision of RCW 14.08.120(6) on standing is equally unpersuasive. RCW 14.08.120(6) is designed to protect members of the public. RCW 14.08.120(6) ("PROVIDED, That in all cases *the public* is not deprived of its rightful, equal, and uniform use of the property." (emphasis added)). This protection is not somehow limited to the one sentence where the word "public" appears, *contra* majority at 876, but rather applies by its plain language to the entire proviso. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003) (courts must construe statutes consistent with their purpose to achieve the legislature's intent, avoiding strained or absurd results in so doing). Furthermore the Revised Airports Act applies by its express terms to port districts but not to privately operated rental car companies. *See* RCW 14.08.010, .120. As a result Branson, and other similarly situated travelers forced to pay the Port's fee, cannot sue the rental car companies directly for allegedly violating the statute. The only way the public can challenge the Port's fee under the statute is to do exactly what Branson has done here, pay the fee and sue the Port. He is entitled to the protections of this statute although the majority turns its back on consumers in favor

of unfair and unreasonable charges by (now unrestrained) government monopolies.

I dissent.

JOHNSON and MADSEN, JJ., concur with SANDERS, J.